CRAIG CERMINARA, APPELLANT, *v.* CALIFORNIA HOTEL AND CASINO DBA SAM'S TOWN HOTEL GAMBLING HALL AND BOWLING CENTER, RESPONDENT.

No. 18058

August 25, 1988        760 P.2d 108

*Hilbrecht & Associates* and *Frederick S. Geihs,* Las Vegas, for Appellant.

*Rawlings, Olson & Cannon* and *John Gormley,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order granting judgment notwithstanding the verdict following a jury verdict. The trial judge held that as a matter of law, the jury's punitive damage award could not be sustained. We disagree and reverse.

### The Facts

Appellant Cerminara was a regular patron at respondent Sam's Town Hotel and Casino. During the evening of September 4, 1983, Randy Vickrey and his wife Lisa joined Cerminara and Cerminara's brother-in-law Mike Morabito at Sam's Town's dance hall. Around 1:30 a.m., after spending a couple of hours at the hall, all four decided to leave. Randy Vickrey met a man the parties referred to as Dudley Do Right[1] near the exit and they

---

[1]Because no one at trial knew this person's real name, witnesses and counsel used this nickname.

visited and laughed about a previous encounter at Sam's Town. Unexpectedly, Morabito came up and took a wild swing at Do Right, missing him. Cerminara and Vickrey quickly intervened and attempted to escort Morabito out of the dance hall.

Cerminara, Morabito and the Vickreys testified to the following sequence of events. As the two men were taking Morabito out of the hall, Don Lovett, the dance hall manager,[2] suddenly came "charging in like a maniac." He pushed or stiff-armed Cerminara, knocking him over a table. Lovett then choked Randy Vickrey until he passed out. Lovett also picked up Lisa Vickrey by the neck, choking her. Security guards then arrived and handcuffed Randy Vickrey.

Lovett and the guards escorted Cerminara and Morabito to a small security office, dragging Vickrey, with his hands handcuffed behind his back and his feet dragging, down some stairs. Once they were in the office, Louis Hines, the casino shift manager, instructed the security guards, Fitro, Odom, Rude, and Puentes, to "86" the three men.[3]

Odom tried to take Vickrey's picture so that it could be used, in the future, to keep him out of Sam's Town. However, Cerminara put his hand in front of the camera, protesting that they had to explain why they were doing this. A guard pushed him down on a chair. When Morabito then told the guards to leave his brother-in-law alone, two guards wrestled Morabito to the floor. When Cerminara tried to pull one of the guards off Morabito, another security guard grabbed Cerminara's arm and pulled it way up behind his back, forcing Cerminara to his knees. Cerminara hollered that they had broken his arm. Despite his complaints, the guards handcuffed Cerminara's hands behind his back. Cerminara continued to complain about his arm, which began to swell.

When Fitro saw the condition of Cerminara's arm, he told the other guards to uncuff him and to cancel an earlier request for police. The guards told them they were "86ed" and escorted them off the property. Vickrey testified that by that time, "Craig couldn't even straighten his arm out. He couldn't put it down. He had to hold it up from the pain. It was already swollen twice its

---

[2]Lovett, over six feet tall, apparently weighed more than two hundred pounds.

[3]"86" is a term, used in the casinos, referring to the process of permanently ousting someone from an establishment or group of establishments. When the casinos "86" someone, security reads him the Nevada Revised Statute dealing with trespass, attempts to get his picture for future reference, informs him that he is not welcome on the premises, and warns him not to come back.

size in the elbow and it was already turning black." When Vickrey rejoined his wife Lisa, her neck was discolored.[4]

Lisa and Randy Vickrey immediately went to the police in an unsuccessful attempt to have Lovett charged with assault and battery. Cerminara went to a doctor and determined his elbow had been dislocated.[5]

Cerminara brought an action against Sam's Town alleging, among other causes of action, (1) assault and battery (2) false arrest and false imprisonment (3) intentional infliction of emotional distress, and (4) negligence.

After considering the evidence, the jury concluded that Sam's Town was negligent in its treatment of Cerminara. The jury found that Sam's Town had battered Cerminara and intentionally inflicted emotional distress. However, in response to Issues 6, 7, and 8 of the special verdict form, the jury left blank the amount of damages Cerminara suffered from Sam's Town's negligence, answered "$0" for the amount of damages Cerminara suffered from battery, and answered "$0" for the amount of damages Cerminara suffered from intentional infliction of emotional distress. Finally, in response to Issue 11 of the special verdict form, the jury divided "the total amount of [past and future] compensatory damages" into $3,000 past damages, $2,000 future, and awarded Cerminara $100,000 in punitive damages.

Eighteen days after the jury verdict, Sam's Town filed a motion for judgment notwithstanding the verdict on the punitive damage award. Sam's Town argued that as a matter of law the punitive damage award could not be sustained without an accompanying

---

[4]The Sam's Town employees' version of the night's events was quite different. Don Lovett testified that after being informed of a problem, he went over to try to settle matters. He testified that when he tried to calm the men down, Randy Vickrey pushed him and two of the other men started fighting. He testified that he then stopped the fighting, using only reasonable force to do so. He testified that the other security guards handcuffed Vickrey before taking him down to the security room because Vickrey struggled, protested, and would not peacefully comply. He denied choking Vickrey or stiff-arming Cerminara.

Odom testified that, when the men were taken to the security room, the casino manager, Ed Hines, told security to "86" the men. Odom tried to take Morabito's picture so that they would know, in the future, that Morabito had been "86ed." Odom testified that Morabito then "smashed the camera into" his face. When the guards tried to restrain Morabito, Cerminara jumped on one of them and, according to Odom, it "turned into a major free for all." Either in the process of getting Cerminara off the guard and back into a chair, or in the process of handcuffing him, one of the guards somehow twisted the arm.

[5]A doctor who examined the arm testified that Cerminara's ulnar nerve was torn loose and continued to cause pain and discomfort. Calcification had also occurred.

award of compensatory damages for an intentional tort. It also argued that there was no proof that Sam's Town ratified or approved any alleged tort by its employees. The district court granted this motion and also awarded Sam's Town approximately $5,000 in costs and attorney's fees. Cerminara appeals from the court's decision.

## Discussion

NRS 42.010 allows punitive damages to be awarded when a defendant "[h]as been guilty of oppression, fraud or malice, express or implied." In this case, the jury concluded that Sam's Town assaulted, battered, and intentionally inflicted Cerminara with emotional distress. It also concluded that Sam's Town's employees acted maliciously or oppressively, awarding $100,000 in punitive damages. However, as noted, in two of the blanks on the verdict form where the jury was requested to decide the amount of damages Cerminara suffered from intentional torts, the jury filled in zeros.

On motion, the district court struck the jury award of punitive damages, concluding:

> (2) The jury did not award any compensatory damages to the Plaintiff as a result of the assault and battery or intentional infliction of emotional distress;
> (3) As a matter of law, the compensatory damages awarded to the plaintiff was [sic] for negligence only, and such a recovery cannot support an award of punitive damages. . . .

We have noted that before granting judgment notwithstanding the verdict:

> [T]he party favored by the verdict is entitled to have the testimony read in the light most advantageous to him, and to be given the benefit of every inference of fact fairly deductible therefrom. Accordingly, an application for such judgment [should] be refused where there is evidence tending to support the verdict, or where there is a conflict of evidence, so that the jury could properly decide, either way, even though the Court would be justified in granting a new trial.

Jacobson v. Manfredi, 100 Nev. 226, 234-35, 679 P.2d 251, 256-57 (1984) (quoting Dudley v. Prima, 84 Nev. 549, 551, 445 P.2d 31, 32 (1968)).

After review of the record, we conclude that there is substantial evidence supporting the jury's findings that (1) Cerminara was assaulted, battered, and inflicted with emotional distress and (2)

Sam's Town employees acted maliciously or oppressively in their attempt to eject Cerminara from their establishment. The overriding issue, however, is whether the manner in which the jury completed the special verdict form precludes an award of punitive damages. Cerminara argues that, in order to award punitive damages, a jury, as long as it has found intentional torts, need not award actual damages for these intentional torts. Sam's Town argues, on the other hand, that the jury, as a basis for punitive damages, must award actual damages.

We conclude that the issue of whether actual damages must be awarded need not be decided in this case. Although the special verdict form could be interpreted differently, one reasonable interpretation is that the jury intended the $5,000 "total damages" to be a lump compensatory award for harm suffered from all three torts committed against Cerminara.[6] As noted above, on a motion for judgment notwithstanding the verdict, the court must view the evidence in the light most favorable to the non-moving party, and this, we note, entails a liberal construction of a jury's special verdict form. As observed in James v. Public Finance Corp., 47 Cal.App.3d 995, 1005-06, 121 Cal.Rptr. 670, 677 (1975):

> [J]urors are not of course versed in the niceties of legal jargon and its many subtle distinctions, and they may have understandably been confused. Had a further explanation been given when they returned with the verdict that they did, it is most probable that any difficulties resulting therefrom would have been avoided.
>
> The verdict in this case should be liberally construed. . . .

The special verdict in the instant case, liberally construed, suggests that the jury in fact did award actual damages for intentional torts, on which punitive damages could be based. Therefore, because actual damages were awarded, and assuming, arguendo,

---

[6]During oral argument, Sam's Town conceded that the special verdict form could be so interpreted:

> JUSTICE STEFFEN: It appears to me that the verdicts are highly anomalous. They determine that the respondent is 90% negligent and provide no amount of damages. They find that the appellant was assaulted and battered and no damages. Same with the intentional infliction of emotional distress. They found liability with no damages. And then, at the very end, after finding that there was malice, oppression, or fraud, they at last place a damage figure. . . . [I]t appears to me that what they have done is placed a compensatory damage figure that applies to all three actions. Doesn't that seem to be what they have done? . . .
>
> Mr. Gormley: That's one interpretation, to be quite frank. As you can well imagine, I've given some thought to try and interpreting [sic] this jury verdict, and I'm not quite sure what they have done.

they are necessary to support punitive damages, the punitive damage award should not have been reversed for lack of actual damages.

The next issue we must decide is whether the jury correctly concluded that Sam's Town was liable for punitive damages for the acts of its employees. The jury was given, at Cerminara's request, the following instructions:

> Punitive damages may be awarded against a principal for acts of the employee *only* if:
>
> . . . .
>
> The principal authorized or ratified the conduct which is found to be the basis for punitive or exemplary damages.
>
> If the principal is a corporation, the . . . authorization, ratification, or act of oppression, fraud or malice must be on the part of any officer, director, or managing agent of the corporation.

The district court also concluded that the punitive damage award could not be sustained because there was no evidence of manager or director participation, ratification, 'or approval of the intentional torts. We conclude, after consideration of the record and oral argument, that there was evidence that Sam's Town, as a principal, authorized and participated in the oppressive or malicious acts.

The jury was instructed that Sam's Town could be liable for punitive damages if the malicious acts were performed or authorized by a managing agent. In determining who is a managing agent, Ghiardi and Kircher note: "In determining whether an agent acts in a managerial capacity, [the key] is to look to what the individual is authorized to do by the principal and to whether that agent has discretion as to both what is done and how it is done. Job titles . . . should be of little importance." J. Ghiardi and J. Kircher, *Punitive Damages* § 24.05 (1984).

The Sam's Town employees responsible for Cerminara's treatment were Lovett, Fitro, Rude, Puentes, and Odom. Fitro, Rude, Puentes, and Odom were security guards, clearly not possessing the necessary discretion and authority to be considered managerial agents. However, at trial, Don Lovett testified that as dance hall manager, he "hired[d] employees, set schedules, [made] sure the room was up set [sic], was taken care of, [and] order[ed] liquor." He added that he "was in charge of making sure that no minors were allowed in the bar and that the patrons were all taken care of and no one was harassed or hassled." Given Lovett's responsibilities, discretion and authority concerning the dance hall, and interpreting the evidence in a light most favorable to

Cerminara, we conclude that the jury could have reasonably considered Lovett a managing agent of Sam's Town.

Accordingly, the record contains evidence of managerial authorization of and involvement in the oppressive and malicious acts. Testimony established that Lovett, as a managerial agent, initiated the evening's events by a violent overreaction to the Morabito/Do Right incident.[7] Once again, the standard for granting motions for judgment notwithstanding the verdict requires us to view the evidence in the light most favorable to Cerminara. Because the record is not devoid of evidence suggesting managerial participation and authorization of oppressive action, the district court's ruling is reversed, and the jury's verdict reinstated.

---

[7]Sam's Town argued, at oral argument, that even assuming Lovett was a managerial agent, Sam's Town could not be liable for punitive damages because Lovett was not in the security office at the time Cerminara's elbow was dislocated. However, although Lovett may not later have actually participated in the excessive force in the security office, by pushing Cerminara over the table and choking both Randy and Lisa Vickrey before taking the men to the security office, he established a tone or pattern of unnecessary and excessive force that continued until the guards realized they may have seriously injured Cerminara's arm. Moreover, Lovett's pushing Cerminara over a table, in and of itself, could have been the basis for the jury award.