ROBERT CRAIGO, Appellant and Cross-Respondent, v. CIRCUS-CIRCUS ENTERPRISES, INC., Respondent and Cross-Appellant.

No. 18515

January 23, 1990                                    786 P.2d 22

[Rehearing denied April 19, 1990]

*Lawrence J. Semenza* and *G. David Robertson,* Reno, for Appellant and Cross-Respondent.

*Petersen & Petersen,* Reno; *Brown, Wells & Kravitz,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

By the Court, STEFFEN, J.:

After being assaulted and robbed in the elevator of the Circus-Circus parking garage, Robert Craigo filed an action seeking both compensatory and punitive damages against Circus-Circus Enterprises, Inc. (Circus-Circus). The trial court, sitting without a jury, awarded Craigo $45,000 in compensatory damages and $1,000,000 in punitive damages. The punitive award was based upon a determination by the trial judge that Circus-Circus had acted with "malice in fact."[1]

---

[1]Craigo appears as appellant in this appeal to contest the "reduction" of the punitive damage award to $1,000,000 after the trial judge had found that an award of $4,000,000 or more was justified. Because of our ruling, this aspect of the appeal will not be discussed.

Circus-Circus agrees that the issue of focus on appeal is the availability of a punitive damage award based upon the circumstances of this case. The key to this issue is the meaning of the terms "malice, express or implied" set forth in Nevada's punitive damages statute (NRS 42.010).[2]

This court has consistently declared that "the malice contemplated by [the punitive damages] section is malice in fact and that the phrase 'express or implied' has reference only to the evidence by which malice is established." Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 609, 503 P.2d 9, 14 (1972). We noted in Nevada Credit Rating Bur. that Nevada's statute on punitive damages is a verbatim copy of the California punitive damages statute "which was enacted in 1872 and has not been amended since 1905."[3] Id. In interpreting the statutory expression "malice, express or implied," we have adhered to the rule of statutory interpretation that when a statute is derived from a sister state, it is presumedly adopted with the construction given it by the highest court of the sister state. See, e.g., El Ranco, Inc. v. New York Meat & Prov., 88 Nev. 111, 113, 493 P.2d 1318, 1320 (1972); Astorga v. Ishimatsu, 77 Nev. 30, 32, 359 P.2d 83, 84 (1961); Harris v. Harris, 65 Nev. 342, 346, 196 P.2d 402, 404 (1948).

The California Supreme Court, in Davis v. Hearst, 116 P. 530, 538 (1911), observed that courts have frequently used "express malice" to refer to malice in fact, and "implied malice" to mean the fictive malice of the law. The Davis court then declared that:

> It should be apparent that the malice, and the only malice, contemplated by section 3294 [California's equivalent of NRS 42.010] is malice in fact, and that the phrase "express or implied" has reference only to the evidence by which that malice is established; "express malice" thus meaning that the malice is established by express or direct evidence going to prove the actual existence of the hatred and ill will; "implied malice" referring to the indirect evidence from

---

[2]NRS 42.010, in its original, pertinent part, reads as follows:

Cases in which exemplary and punitive damages may be awarded. In an action for the breach of an obligation not arising from contract, where the defendant:

1. Has been guilty of oppression, fraud or malice, express or implied;

. . . .

the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(NRS 42.010 was renumbered and is now NRS 42.005.)

[3]Cal. Civil Code § 3294 was amended by 1980 Cal. Stat. 1242, p. 4217, to delete the phrase "express or implied." Additional amendments were adopted in 1987. See 1987 Cal. Stat. 1498, § 5, 5-6.

which the jury may infer the existence of this malice in fact. We say this should be evident from the reading of the section itself, under the maxim of noscitur a sociis. It is in those cases where the defendant has been guilty of oppression or fraud, or of a malice akin to oppression and fraud, that punitive damages may be awarded. But throughout the whole history of the law, whatever may be the mode of proving the existence of malice in fact, it is only upon some showing regarded by the law as adequate to establish the presence of malice in fact (that is, the motive and willingness to vex, harass, annoy, or injure) that punitive damages have ever been awarded. And this the adjudications abundantly and without controversy establish.

*Id.* at 539 (emphasis added).

The California courts have continued to reaffirm the *Davis* holding regarding the meaning of the phrase "malice, express or implied."[4] Moreover, the courts in California from *Davis* to the present have discussed the shifting contours of the term "malice" and its discrete variants in the form of express malice, or malice in fact, and implied malice, or malice in law. The latter form of malice is in tort law, a legal fiction. As expressed by the California Supreme Court, malice in law is defined as "that malice which the law presumes (either conclusively or disputably) to exist upon the production of certain designated evidence, which malice may be fictional and constructive merely, and which, arising as it usually does from what is conceived to be the necessity of proof following a pleading, which in turn follows a definition, is to be always distinguished from true malice or malice in fact." Davis v. Hearst, 116 P. at 538.

As noted above, this court has consistently recognized and perpetuated the judicial gloss attributed to *Davis* since NRS 42.010 was enacted in this state in 1965. *See, e.g.,* Jeep Corp. v. Murray, 101 Nev. 640, 650, 708 P.2d 297, 304 (1985) ("Malice" [referred to in NRS 42.010] means malice in fact); Warmbrodt v. Blanchard, 100 Nev. 703, 709, 692 P.2d 1282, 1286 (1984) ("The term malice as used in the statute means malice in fact and denotes ill-will, or a desire to do harm for the mere satisfaction of doing it.") (quoting Bader v. Cerri, 96 Nev. 352, 359, 609 P.2d 314, 318-319 (1980)); Wickliffe v. Fletcher Jones of Las Vegas, 99 Nev. 353, 356, 661 P.2d 1295, 1297 (1983) (malice in fact supports punitive damages instruction); *Bader,* 96 Nev. at 359, 609 P.2d at 318 ("The term malice as

---

[4]*See, e.g.,* Liu v. Interinsurance Exchange, 205 Cal.App.3d 968, 982, 252 Cal.Rptr. 767, 776 (1988).

used in the statute means malice in fact and denotes ill will, or a desire to do harm for the mere satisfaction of doing it."); Kelly Broadcasting v. Sovereign Broadcast, 96 Nev. 188, 194, 606 P.2d 1089, 1093 (1980) ("In order to award punitive damages, the trial court must find substantial evidence of malice in fact."); Sanguinetti v. Strecker, 94 Nev. 200, 211-212, 577 P.2d 404, 411-412 (1978) ("There is no reason to believe that the jury understood that the malice it was to find [an evil intention to do harm, on the part of the defendant] was in any manner different from this definition. As noted by this court, legal malice is 'a legal fiction; it is that form of malice which the law presumes. . . .' [Citing Nevada Credit Rating Bur.]. Without an instruction informing them of it, a jury would have no reason to know of its existence."); Leslie v. Jones Chemical Co., 92 Nev. 391, 394, 551 P.2d 234, 235 (1976) (recognizing need to prove malice in fact); Village Development Co. v. Filice, 90 Nev. 305, 315, 526 P.2d 83, 89 (1974) ("[T]he evidence does not to us appear quite sufficient to meet our previously established requirement that more must be shown than malice in law, and that there must be substantial evidence of malice in fact. [Citing Nevada Credit Rating Bur.]"); Caple v. Raynel Campers, Inc., 90 Nev. 341, 344, 526 P.2d 334, 336 (1974) ("The malice contemplated by NRS 42.010 is malice in fact and the phrase 'express or implied' has reference only to the evidence by which malice is established. Malice in fact must be established by the evidence if it is the ground relied upon to support and award of punitive damages."); Nevada Cement Co. v. Lemler, 89 Nev. 447, 451, 514 P.2d 1180, 1182-83 (1973) ("NRS 42.010 provides that punitive damages are recoverable where the defendant has been guilty of . . . malice expressed [sic] or implied. That statute was first enacted in the State of Nevada in 1965 and is verbatim with California Civil Code, Sec. 3294, which was first enacted in 1872 and has not been amended since 1905. The cases decided in that jurisdiction have interpreted that the malice contemplated by that section is malice in fact and that the phrase 'express or implied' has reference only to the evidence by which malice is established. [Cited cases omitted.] In [Nevada Credit Rating Bur.] we adopted the applicable principles, as set out in 14 Cal.Jur.2d, Damages, § 176.").

Unfortunately, neither the California courts nor this court have toed the mark in vigilant conformity with the dictates of Davis concerning the species of malice essential to the imposition of punitive damages. Even as the California courts continue to recognize Davis as the authoritative definitional fountain of malice, the constraints heavily embedded in Davis have expanded or

evolved to include acts committed with "a conscious disregard of the plaintiff's rights." Liu v. Interinsurance Exchange, 205 Cal.App.3d 968, 982, 252 Cal.Rptr. 767, 776 (Cal.Ct.App. 1988). *See also* Taylor v. Superior Ct. of Los Angeles Cty., 598 P.2d 854 (Cal. 1979); Neal v. Farmers Ins. Exchange, 582 P.2d 980 (Cal. 1978); Silberg v. California Life Insurance Company, 521 P.2d 1103 (Cal. 1974). In Grimshaw v. Ford Motor Co., 119 Cal.App.3d 757, 808, 174 Cal.Rptr. 348, 381-82 (1981), the court observed that the constraints of *Davis* have yielded to subsequent decisional law that has advanced the common law pertaining to punitive damages to the point where the term "malice" includes "not only a malicious intention to injure the specific person harmed, but conduct evincing 'a conscious disregard of the probability that the actor's conduct will result in injury to others.' " Moreover, the *Grimshaw* court, in giving a "dynamic" attribute to the punitive damages statute, held that interpreting the word "malice" as used in the statute, "to encompass conduct evincing callous and conscious disregard of public safety by those who manufacture and market mass produced articles is consonant with and furthers the objective of punitive damages." *Id.*, 119 Cal.App.3d at 810, 174 Cal.Rptr. at 382.

It would appear from our research of the California cases that although the courts continue to pledge fealty to the *Davis* concept of malice in fact as the only form of malice that will support an award of punitive damages, the courts have *sub silentio* overruled *Davis* on that point and now base punitive awards on both malice in fact and implied malice, or malice in law.

In Nevada, while consistently reaffirming the vitality of the *Davis* doctrine in our own decisional law (see cases cited above), this court has, on occasion, also affirmed punitive awards based upon malice of a nature foreign to our own rulings on the subject. Thus, in Leslie v. Jones Chemical Co., 92 Nev. 391, 551 P.2d 234 (1976), we affirmed a punitive award based upon a form of non-focused "malice" inferable from a disregard of known safety procedures; punitive damages were also declared appropriate to punish wrongful conduct that was "willful, intentional, and done in reckless disregard of its possible results." Nevada Cement Co. v. Lemler, 89 Nev. 447, 451-52, 514 P.2d 1180, 1183 (1973). Neither *Leslie* nor *Nevada Cement Co.* presented facts reflecting ill-will and hatred that *Davis* considered to be the very fabric from which malice in fact is woven. Indeed, *Davis* declared that a prerequisite for punitive damages is "the evil motive—the animus malus—shown by malice in fact, or by its allied malignant traits and characteristics evidenced by fraud or oppression." *Davis*, 116 P. at 540. *Davis* also declared three

elements essential to a finding of malice in fact: (1) the commission of an unlawful act; (2) the commission of the act must be deliberate; and (3) the act must be committed with the deliberate purpose of injuring another. *Id.* at 541.

The above analysis supports the proposition that NRS 42.010, as a verbatim copy of the original California statute, provides a basis for punitive awards when one or more of the "birds of a feather," oppression, fraud or malice in fact, is shown to exist in a given action. In each instance, there is a deliberate motive or intent and willingness to "vex, harass, annoy or injure" the plaintiff. *Id.* at 539.

On the other hand, the species of malice known as implied malice or malice in law is "distinguished from [malice in fact] simply by absence of the need to look to the actor's motivation and purpose." 2 J. Ghiardi & J. Kircher, *Punitive Damages Law and Practices* sec. 19.19, p. 60 (1985). Thus, malice has been implied in law when "a tort resulted from a voluntary act, even if no harm was intended." Smith v. Wade, 461 U.S. 30, 39 n.8 (1983). The fictive form of malice implied in law focuses on a wrongful act, consciously committed, that results in injury whether intended or not. Therefore, malicious conduct implied by law may be attributed to those who merely disregard known safety measures or disregard the rights of others knowing that harm to others may occur as a result.

It appears to us evident that a critical difference between malice in fact and malice in law is the element of purposeful intent to injure always present in the former. Indeed, the desire to successfully inflict injury on another is the *sine qua non* of malice in fact, whereas injury to another is usually an unintended, or in any event, an undesired incident of conduct deemed malicious by implication.

As previously observed, *Grimshaw* purports to advance the common law by, in effect, engrafting the fictional malice implied in law onto the California punitive damages statute. In doing so, the *Grimshaw* court determined that it was furthering the purposes and objectives of punitive awards. Although we do not dispute such a premise by the *Grimshaw* court, we are troubled at the thought of following suit by tacitly abandoning the continuing statutory integer of true malice in fact. The truth of the matter is that such an "advancement in the common law" would be tantamount to overruling our long and consistent (albeit not always consistently applied) line of cases declaring the statutory meaning to include only malice in fact. In Nevada, the effect of such a ruling would be to change both the meaning and scope of statu-

tory malice to include conduct inherently malicious (malice in fact) and conduct malicious only because it is so deemed by law. This we are reluctant to do.

If we were to embrace implied malice as a separate basis for punitive awards we would be forced to do so under one of two rationales, neither of which is acceptable. First, we could overrule our lengthy precedents in tacit acknowledgement of error unworthy of continued perpetuation. This we are unwilling to do because we remain unconvinced that *Davis* is unsound and, in any event, as noted previously, the *Davis* gloss became part of NRS 42.010 upon its enactment in Nevada. Moreover, the Legislature has been unmoved to change the *Davis* nuance over the many years that we have reaffirmed its vitality.

Second, the common law evolves by recognition of firmly entrenched social attitudes and practices. The common law does not shape or establish public policy and mores; rather, it is reflective of them. It remains consistent with public policy as expressed by NRS 42.010 to financially punish persons who deliberately injure others. In today's climate, however, it is difficult to perceive a unitary attitude or policy favoring imposition of punitive awards under circumstances requiring the invocation of a fictional malice implied in law. Indeed, the American College of Trial Lawyers, through a recent report approved by its Board of Regents, concluded that punitive damages should be reserved to those extreme cases reflecting cognitive behavior that is outrageous and indicative of bad motive or evil mind.[5] In short, the decibel level of strident choruses arising among varied and substantial segments of our society calling for retrenchment in punitive awards scrambles efforts to distinguish the clarion sounds upon which common law pronouncements are legitimately based.

Great debate is currently prevalent concerning the social costs of punitive awards expanding in scope, amount and volume. Under such conditions, we are constrained to view the demands

---

[5]American College of Trial Lawyers, *Report on Punitive Damages of The Committee on Special Problems in the Administration of Justice*, pp. 12-13, March 3, 1989. A majority of the Committee recognized the force of opinions advocating the elimination of punitive damages because, *inter alia*, under the common law such damages originated primarily as surrogates for non-economic damages (pain and suffering) which are generally allowed now as part of compensatory damage awards and that punishment should be restricted to the criminal justice system and specific legislative enactments. *Id.* at 8. Nevertheless, the Committee concluded that sanctions in the form of punitive damages are still needed "in carefully limited situations." *Id.* at 9, 10.

of judicial responsibility to be in strict accord with our prior rulings limiting punitive awards based upon malice to mean only malice in fact. More specifically, it is this court's intention to restrict awards of punitive damages attributable to malice in fact to those extreme cases that convincingly demonstrate conduct motivated by hatred and ill-will and the deliberate intent to injure. Difficulties arise when the judicial gaze is not transfixed on the indispensable element of malice in fact, i.e., the evil motive. A defendant's conduct may have an evil or injurious result, but no underlying evil motive to injure. It is the evil motive to injure that must be shown directly or by inference as a predicate for a punitive award based upon malice. If the judicial course remains tethered to that compass, punitive verdicts should be limited to those actions that truly warrant state-imposed sanctions. Persons who willfully intend to injure are deserving of the special monetary sanction that is designed to punish and deter. Others who, by their conduct, cause injury are held accountable in the form of compensatory damages.

We disapprove our prior pronouncements that would indicate that malice in fact can be shown by a willful disregard of the rights of others or a conscious disregard of safety measures unless it can be shown that in connection therewith there was a deliberate intention to injure, vex, annoy or harass. If the Legislature determines that the social benefits to be derived from imposing punitive awards based upon implied malice exceed the social costs thereof, we are confident appropriate supporting legislation will follow.[6]

---

[6]The California Legislature made provision for punitive awards based upon implied malice when it amended Civil Code section 3294 to include the following definition of malice: " 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff [malice in fact] or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others [implied malice]."

We have no quarrel with our concurring colleague's exposition of the established differences between malice in fact and implied malice in jurisdictions that recognize the two forms of malice as discrete grounds for an award of punitive damages. Moreover, we acknowledge that sound reasons exist for imposing punitive awards in situations involving no specific evil motive or intention to harm but rather a conscious disregard for the safety of others. Perhaps a few years ago we could have discerned a pervasive public attitude supporting an abandonment of our case precedents as an appropriate advancement in the common law tradition. But the "Malice in Wonderland" referred to by our colleague bespeaks the type of present controversy concerning the place and extent of punitive awards that eliminates the option of a principled resolution of the dispute under the guise of acceptable judicial lawmaking according to a common law methodology.

Moreover, our colleague's attempt to validate his position by referring to the statutory language (use of the disjunctive "or" in the phrase "malice,

We are constrained to observe that if this court had recognized malice in law as a basis for proving malice under NRS 42.010, we would have felt compelled to affirm the punitive award given Craigo by the trial judge. There is ample evidence in the record proving disregard by management level personnel at Circus-Circus of safety measures reasonably necessary to remedy hazardous conditions in its parking garage. The evidence would also indicate corporate knowledge of the possibility—if not probability—of additional injuries to patrons as a result of failing to implement adequate security measures. However, we do not perceive evidence of any intent by Circus-Circus to deliberately harm its patrons—the invitees upon whose patronage and good will its continued existence depends. In fairness to the trial judge,

express or implied") seems to us both disingenuous and excessively belated given this court's long-standing and consistent pronouncements to the contrary.

We believe that this court could not, with equanimity, embrace our colleague's preference without forthrightly overruling our uniform declarations attributing only one form of malice to our statute. Even in the act of reaching results supportive of our colleague's position in the *Leslie* and *Nevada Cement* cases, this court continued to adhere to the single standard of malice in fact as the linchpin for a punitive award based upon malice. In *Leslie,* we said: "We here are dealing with a remittitur of punitive damages where the evidence regarding the presence or absence of *malice in fact* on the part of the defendants is conflicting. . . . Realizing the subjective nature of punitive damages . . . and the arguable conflict of evidence regarding *malice in fact,* we are wholly unable to find an abuse of discretion by the trial judge. . . ." 92 Nev. at 393-394, 551 P.2d at 235 (emphasis added).

In *Nevada Cement,* we said: "The record supports a finding of *malice in fact.* . . . This conduct provided the *requisite malice in fact* and warranted the trial judge in assessing punitive damages." 89 Nev. at 452, 514 P.2d at 1183 (emphasis ours).

It thus seems clear to us, that an adoption by this court of our colleague's plea for two discrete forms of malice would demand the overruling of all of our precedents on the subject. And, as previously observed, were we to do so, a true adherence to common law principles would still prevent us from judicially embracing our colleague's view.

We are constrained to conclude that in the midst of raging controversy concerning the place and scope of punitive awards in civil litigation, this court may not, for scholarly reasons or otherwise, so distort and pervert common law prerogatives as to "declare" malice in law as reflective of established custom and public policy in the State of Nevada. If indeed, the Legislature determines that the California statute permitting punitive awards for "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others" is worthy of adoption in Nevada—and it may very well be—we are confident the Legislature will act accordingly. In the interm, we prefer to confine our prerogatives to what we perceive to be within reasonable parameters of the common law, and leave the issue to the legislative laboratory where lively debate will supply an enlightenment born of opposing views, conflicting social policies, and varying predicted consequences.

we likewise find no fault in his reasoning or his punitive award based upon the equivocal stance of certain of our own prior rulings.[7]

For the reasons specified above, that part of the judgment awarding punitive damages is reversed; in all other respects, the judgment below is affirmed.[8]

YOUNG, C. J., concurs.

SPRINGER, J., concurring:

I agree that the record in this case does not support a finding of malice which would support a punitive damage award. I strongly disagree, however, with the reasoning of the plurality opinion which, incorrectly I think, would limit the Nevada statutory expression, "malice, express or implied," to cases of express malice only, that is to say, cases in which the defendant is shown to have harbored a "deliberate intention to injure, vex, annoy or harass" the plaintiff. Plurality Opinion at 9. It is clear to me that "malice, express or implied" necessarily goes beyond the intentional injury by one person of another and that the statute and our cases require a broader definition of malice than that offered by the plurality opinion.

Our statute refers to two kinds of malice, express malice and implied malice. Express malice denotes the *deliberate intention to harm someone*. Implied malice is a malice of unintended harm, a malice implied in law when wrongdoers, without intending spe-

---

[7]We are somewhat perplexed by our brother SPRINGER's concluding view that his singular perception of the status of Nevada law should be used as a guide by the trial courts. In our opinion, it is clear that Justice SPRINGER's interpretation of our case holdings is irreconcilable with the unequivocal language and import of those holdings and may not logically be embraced as a guide or otherwise. Moreover, our brother's concluding comments reflect a confusion of thought concerning the characteristics of the discrete forms of malice he wishes to impose on our statute. When the good Justice expresses agreement with the proposition that punitive awards should be restricted to "cases reflecting cognitive behavior that is outrageous *and* indicative of *bad motive* or *evil mind*" (emphasis ours) he is describing but one form of malice, and that form is malice in fact. Indeed, in the text of his concurring opinion, our colleague notes that "[u]nlike express malice, implied malice does not require that the defendant be motivated by ill will or intent to harm anyone."

Finally, we are much less convinced than our brother concerning the effect of the "plurality opinion" as legal precedent. A quorum of three Justices has concurred in the judgment although one of the three has departed from the reasoning of the other two. We are inclined to view the reasoning and holding of the plurality view as binding unless and until overruled by three or more Justices of this court or an intervening act of the Legislature.

[8]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

cific harm, act in an irresponsible manner knowing that harm to someone will probably follow. One of several Nevada case examples of implied malice supporting a punitive damage award can be seen in the *Nevada Cement* case. In that case the defendant cement company had no "deliberate intention to injure" anyone, it merely caused noxious materials to emanate from its plant knowing that injury to those in the area would be the probable consequence of its heedless actions. Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973). This implied malice on the part of Nevada Cement Company was held by this court to support a punitive damage judgment. *Id.* at 452, 514 P.2d at 1183.

Similarly, this court recognized the presence of implied malice in the *Leslie* case in which plaintiffs were injured by escaping chlorine gas. Leslie v. Jones Chemical Co., 92 Nev. 391, 551 P.2d 234 (1976). We approved a punitive award absent even a hint of any "intention to injure" the plaintiffs. *Id.* at 394, 551 P.2d at 235. Again in *Filice* we expressly recognized that an unintended injury could still be malicious when harm was the "necessary consequence" of a defendant's "willful" acts. Village Development Co. v. Filice, 90 Nev. 305, 315, 526 P.2d 83, 89 (1974). Given our case law and a statute providing for both express malice and implied malice, it is not easy to understand how the plurality can reach the conclusion that there is no such thing as implied malice in Nevada. I think I understand the source of the confusion and believe that this area of law is in need of some clarification.

The United States Supreme Court has recognized that " 'malice,' as used by courts and lawyers in the last century, was a hopelessly versatile and ambiguous term, carrying a broad spectrum of meanings . . . (especially when it was modified by terms such as 'actual' or 'express,' . . .)" Smith v. Wade, 461 U.S. 30, 39 n.8 (1983). The "hopelessly versatile and ambiguous" term *malice* has indeed been assigned a "broad spectrum of meaning" in the jurisprudence of this state and its sister state, California.[1] I

---

[1]The ambiguity often found in judicial attempts to define and apply the concepts of express malice and implied malice is exhibited in both Nevada and California case law. My view, that the statutory expression "malice express or implied" refers to two forms of malice, malice in fact and malice in law, is belied by the language of *Nevada Credit Rating Bureau* which contains, ostensibly at least, language to the effect that there is only one kind of malice, namely, malice in fact, and that the phrase "express or implied" refers not to two kinds of malice but "only to the evidence by which malice is established." Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 609, 503 P.2d 9, 14 (1972). The faulty conclusion that there is but one kind of malice, that is express malice, sometimes called "malice in fact," originated in a 1911 California case, Davis v. Hearst, 116 P. 530 (Cal. 1911). *Davis* was an intentional tort case involving only express malice, and it was decided

hope to narrow this spectrum of meaning and offer an intelligible meaning and definition of the statutory expression, "malice," express or implied.

without reference to a statute, like ours, which specifies two kinds of malice, "express or implied." Subsequently, courts in both Nevada and California quoted *Davis* and ruled that there was only one form of malice, that involving the specific intention to hurt someone. Although California courts frequently cited *Davis,* at the same time they were recognizing a form of malice which involved unintended injury (implied malice) as one of two predicates for awarding punitive damages. In 1941, the California Supreme Court, in dicta, stated that wanton and reckless misconduct was sufficient to support punitive damages based on malice. Donnelly v. Southern Pacific Co., 118 P.2d 465, 469 (Cal. 1941). In 1960, in Roth v. Shell Oil Co., 8 Cal.Rptr. 514, 517-18 (App. 1960), "conscious disregard for the rights of others" was recognized as malice. These cases were followed by a series of rather confusing cases that again insisted that there was only the one kind of "actual" malice, yet allowed recovery in situations in which there was clearly no actual intent to harm.

In 1965, Nevada adopted California's statute verbatim, together with its sometimes inconsistent and confusing judicial gloss. The confusion was to some extent recognized and clarified by the California courts in the case of G. D. Searle & Co. v. Superior Court, 122 Cal.Rptr. 218, 222-23 (App. 1975). Recognizing the divergency in California law, the court said:

> In order to test plaintiff's allegations as a charge of malice, it is necessary to observe the elements of the malice which justifies an exemplary award. At this point one discovers a plethora of appellate elucidations. California courts have indulged in a profusion of pejorative terms to describe malice. A survey reveals several separate and somewhat divergent currents of California case law.

*Searle* pointed out that while some courts had repeated the *Davis* language about malice being limited to intentional harm only and about malice in fact's being the only kind of cognizable malice, a number of appellate decisions recognized varying forms of unintentional injury infliction as being sufficient to establish the *animus malus,* or evil motive, required for punitive damages. *Id.* at 223-24.

The *Searle* court concluded that *"conscious disregard of safety* [was] an appropriate description of the *animus malus* which may justify an exemplary damage award when nondeliberate injury is alleged." *Id.* at 225 (emphasis in original). Citing *Roth v. Shell Oil Co.,* the California Supreme Court also acknowledged that conscious disregard of the plaintiff's rights would support a punitive damage award under the statute. Silberg v. California Life Ins. Co., 521 P.2d 1103, 1110 (Cal. 1974). Thus, the California courts resolved the conflict between the *Davis* requirement of malice in fact and the later cases which also allowed implied malice to support punitive damages by allowing punitive damages to be based on conscious wrongdoing with probable but not intended injurious consequences. *Id.*

Nevada's experience is parallel to California's. In its cases Nevada had cited *Davis* and *Nevada Credit Rating Bureau* on the requirement of "actual malice" and then approved punitive awards that were clearly based on unintended injury. While paying lip service to the requirement that malice in fact—intent to harm—must be found, this court has regularly allowed recovery for unintended harm in the form of reckless disregard for the rights of others. *See e.g.,* Leslie v. Jones Chemical Co., 92 Nev. 391, 551 P.2d 234 (1976) (stating that malice could be inferred from a disregard of known

*"Malice, Express or Implied"*

Former NRS 42.010 (now NRS 42.005) allows punitive damages to be awarded in cases wherein a defendant is "guilty" of "malice, express *or* implied." (My emphasis.)

*Express malice,* sometimes called "[m]alice in fact, or actual malice, denotes ill will on the part of the defendant, or his desire to do harm for the mere satisfaction of doing it." Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 610, 503 P.2d 9, 14 (1972). Express malice, then, may be seen as a malice of *intended* harm, the kind of malice which the plurality believes is the only kind of malice.

*Implied malice* is malice of unintended harm[2]; it is "distinguished from [express malice] simply by absence of the need to look to the actor's motivation and purpose." 2 J. Ghiardi & J.

---

safety procedures); Village Development Co. v. Filice, 90 Nev. 305, 526 P.2d 83 (1974) (stating that malice could be found if the act was willful and the damage a necessary result); Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973) (citing Toole v. Richardson-Merrell, Inc., 60 Cal.Rptr. 398 (App. 1967), and holding that wanton disregard for the rights of others amounted to legal malice).

[2]In defining the malice of unintended harm the trial court used the words "when a defendant consciously and deliberately disregards known safety measures in reckless disregard of possible results." These words are taken directly from Leslie v. Jones Chemical Co., 92 Nev. 391, 393, 551 P.2d 234, 235 (1976). I would be leery of perpetuating the use of the term "reckless" because it is ambiguous and easily confused with gross negligence and other terms that relate to the *risk* inherent in behavior rather than to the mental state of the actor. Sometimes *reckless* is defined in terms of being merely "careless" or "heedless"; sometimes it refers to the mental state of "indifference to[] consequences, under circumstances involving danger to life or safety to others, although no harm was intended." *See* Black's Law Dictionary 1142 (5th ed. 1979). Likewise, "indifference" does not convey the conscious or willful excessive risktaking which is at the heart of implied malice. Under a statute, such as Nevada's, which states malice as a ground for awarding punitive damages, recklessness as a form of excessive negligence, and indifference, insofar as the word may mean mere carelessness, do not reach the level of punishable culpability contemplated by the term *malice.* The report of the American College of Trial Lawyers, mentioned in the text, "would not permit punitive awards where the element of *consciousness* is sufficiently lacking, such as in the case of negligent, or even grossly negligent, conduct." American College of Trial Lawyers, "Report on Punitive Damages of the Committee on Special Problems in the Administration of Justice," at 10 (March 3, 1989). I agree with this, as I agree also that the standard for culpability for punitive awards "should require a conscious and egregious invasion of the rights of others" such as intentional torts or "torts based on lesser degrees of cognition, such as where the defendant acts in a willful or wrongful manner." *Id.* The necessary "degree of cognition" for implied malice is the knowledge or consciousness of danger. A person who is negligent fails to perceive danger; a person guilty of implied malice perceives the danger but willfully disregards it: "I know that someone will probably get hurt, but I am going to do it anyway."

Kircher, *Punitive Damages Law and Practice* § 19.19 at 60 (1985). Unlike express malice, implied malice does not require that the defendant be motivated by ill will or intent to harm anyone. Malice has been implied in law "whenever a tort resulted from a voluntary act, *even if no harm was intended." Smith v. Wade,* 461 U.S. at 39 n.8 (my emphasis). For example, a person may do something knowing it to be dangerous and realize at the time that someone will probably get hurt, yet have no real intention to harm anyone. Such a person is guilty of implied malice. Where a person consciously acts in a dangerous manner, *knowing* that the probable result of that action will be injury to others, inquiry into actual motive or intent becomes unnecessary because the law will infer from such willful misconduct the " 'legal equivalent' of actual malice." *Ghiardi, id.*[3]

In Village Development Co. v. Filice, 90 Nev. 305, 315, 526 P.2d 83, 89 (1974), we accurately noted that in previous cases we had "sustained awards of punitive damages where evidence showed the wrong was willful, and the damage *either* intended *or* a necessary consequence" of the willful wrongdoing. (My emphasis.) This court's use of the disjunctive in *Filice* shows rather clearly Nevada's acceptance of both a malice of intended harm (express malice) and a malice of conscious wrongdoing but of unintended harm (implied malice).

The language of *Filice* embraces both kinds of malice. If the defendant intends to harm, the defendant is guilty of express malice. If the defendant does not intend to harm anyone, yet knows that the probable or "necessary consequences" of his or her acts will be harm to some unidentified victim, than the defendant is guilty of implied malice. Otherwise put, when the defendant knows that injury will probably result from his or her

---

[3]The universally accepted rationales for punitive and exemplary damages are, as the words denote, to punish the offender for wrongful acts and to set an example, that is, to deter others. Punishment by way of civil fines, punitive damages, is not to be levied lightly or indiscriminately. Malice in punitive damage cases is analogous to malice aforethought in the criminal law of homicide. In the law of homicide, express malice aforethought means an intention to kill. Implied malice aforethought, on the other hand, does not require actual ill will or intention to kill and signifies a general malignancy, an "abandoned and malignant heart" that the law infers from the manner in which the homicide was committed. Thus, when a person charged with murder has willfully committed an act which by its nature is likely to result in death or serious bodily harm, the *law* will furnish the necessary element of malice aforethought. It will imply the *mental* requisite for murder by implying malice aforethought from the culpable conduct of the accused. Implied malice in tort law is comparable to implied malice aforethought in the law of homicide. Implied malice in tort law is also a fictive mental state implied in law from the conscious wrongdoing of the tortfeasor, irrespective of actual ill will or the presence of an intention to harm someone.

actions and, consciously disregarding the probability of injury to others, goes ahead wrongfully to commit the dangerous acts, such a defendant is guilty of implied malice and is subject to being punished by punitive damages. Implied malice is a culpable state of mind that is manifested by a person's conscious taking of excessive risks at the expense of injury to others; so, when one consciously decides to act in a dangerous manner and that decision is made despite the knowledge that the action will probably result in injury to others, such a decision, such a conscious disregard[4] of the safety and personal integrity of other persons, constitutes malice, malice implied in law.

Examples of implied malice are easy to come by. A useful example was given by Senator Cliff Young during legislative hearings on punitive damages as now codified in NRS 42.005 (formerly NRS 42.010). Apparently recognizing the culpability of unacceptable, deliberate risktaking and of exposing others to danger even if no harm was specifically intended, Senator Young gave this illustration:

> Suppose a big drug company puts out a certain drug and they *know* there is something wrong with it, but they still put. forward a big campaign for it. Then you can sue for punitive damages.

*Hearings on S.B. 198 Before the Assembly Judiciary Comm.,* (1967) (statement of Senator Cliff Young, sponsor of S.B. 198) (my emphasis). Senator Young was, at that time, at least, of the opinion: "An irresponsible attitude toward an individual or a group as a whole is a ground for punitive damages." *Id.* Product liability cases such as the hypothetical case suggested by Senator Young are classic instances of the need to punish those who injure others in an irresponsible manner but without having any actual malice or intention to harm any given person.[5] The rule proposed

---

[4]The essence of the "culpable mental state" called implied malice is the decision to go ahead knowingly with an activity that one knows will probably end up in an injury to another person. To say that one acts in a manner that he or she knows will probably hurt someone is the same as saying that such person is consciously disregarding the rights or safety of others. "Conscious disregard" is, then, another way of referring to an intentional risktaking which one knows will probably result in injury.

[5]An interesting statutory analogue to the implied malice discussed in this opinion is found in former NRS 42.010(2), wherein punitive damages were allowed in cases in which a defendant *wrongfully,* that is, "caused an injury by the operation of a motor vehicle in violation of NRS 484.379 or 484.3795 after willfully consuming or using alcohol or another substance, *knowing* that he would thereafter operate the motor vehicle." (My emphasis.) In such a case, irrespective of any actual malice or ill will, a defendant may be held for *unintended* harmful consequences resulting from this kind of *wrongful* conduct. This statutory species of implied malice can be taken as legislative approval of a kind of malice that does not require a specific intent to injure.

by the plurality would eliminate punitive damage awards in the type of drug case exampled by Senator Young during legislative deliberations.

Assuming that "malice express or implied" is not restricted to the deliberate injury of an intended victim, I think it is necessary to go on to examine how the type of cognition called malice can be applied to an impersonal corporation thus making a corporation liable in punitive damages for its *animus malus*.

### Corporate Malice

Malice is essentially a mental concept, a cognitive process; and definitionally we run into trouble when we start talking about malice's being exhibited by a corporate entity. Malice as a state of mind must in some way be accommodated to the "corporate mentality" if corporations are, indeed, to be found guilty of "malice, express or implied." It is settled law, however, that corporations can be guilty of malice and can be mulcted in punitive damages for such malice. "[T]o render a corporation liable in exemplary damages, the intent or malice necessary to warrant the imposition of such damages *must be brought home to it.*" 2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts*, § 8.51 (1985) (my emphasis).

Punitive damage liability of a corporation for malice may be "brought home" to a corporation directly or vicariously. By "directly" I mean malice and ill will that issues forth from the corporation itself. For example, a corporate board could decide that the corporation was going to inflict wrongful or unwarranted injury on a competitor and thereby render the corporation liable for punitive damages by reason of such express corporate malice. A corporation could also be guilty directly by reason of the *implied* malice in a case where corporate management orders corporate actions, knowing that the probable consequences of the corporate actions would be injury to others.

A good example of implied malice's being directly attributed to or "brought home" to a corporation can be found in the previously mentioned case of Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973), in which the corporation "knew" of the probable harmful results of its wrongful acts. The Nevada Cement Company *"knew* from the outset that a large volume of dust was being discharged" wrongfully into populated areas by one of its cement kilns. 89 Nev. at 452, 514 P.2d at 1183 (my emphasis). After becoming aware of the harmful effects of the emissions from its kiln, the company "intentionally operated" the kiln anyway. The Nevada Cement Company was directly guilty of implied malice, even though this court erroneously labeled the conduct "malice in fact." *Id.* at 452, 514 P.2d at 1183.

Another excellent example of malicious misconduct's having been "brought home" directly to the corporation itself is found in the California case of Grimshaw v. Ford Motor Co., 174 Cal.Rptr. 348 (App. 1981). Although the current California punitive damage statute does not, as in Nevada, refer to civil malice in terms of being either "express" or "implied," the California statute, Civil Code section 3294, does define two different species of malice: one is "conduct which is intended by the defendant to cause injury to the plaintiff" (express malice); and the other is where malice is present not because the defendant has the intent to cause injury to someone but, rather, because the defendant has acted "with a willful and conscious disregard of the rights or safety of others" (implied malice). Cal. Civ. Code § 3294(c)(1) (West Supp. 1990). In *Grimshaw,* Ford Motor Company was held liable for punitive damages by reason of Ford's corporate decision to continue to install dangerous fuel tanks on its Pinto automobiles. The evidence was that Ford management could have corrected the hazardous design defects at minimal cost but made a knowing corporate decision to defer such correction, the decision being based on a cost-benefit analysis which balanced human life and safety against corporate profit. This kind of corporate decision-making was held to have "constituted 'conscious disregard' of the *probability* of injury to members of the consuming public." *Grimshaw,* 174 Cal.Rptr. at 384 (my emphasis). It was clear that corporate management "*knew* that the Pinto's fuel tank and rear structure would expose consumers to serious injury or death" and that Ford management "could have corrected the hazardous design defects at minimal cost but *decided"* not to on the basis of a "cost-benefit analysis balancing human lives and limbs against corporate profits." *Id.* (my emphasis). Such willful wrongdoing on the part of the Ford corporation, whose management "knew" of the injuries that would probably result from the corporate decision, is a very lucid example of what I would call direct implied malice.[6]

---

[6]In connection with the historical footnote above, note 1, I note that in the *Grimshaw* opinion the court rejected Ford's contention that it did not have fair warning of punitive damage liability based on unintentional wrongdoing stating that such an argument "ignores the long line of decisions in [California] beginning with *Donnelly v. Southern Pacific Co.* (1941), [cite omitted], holding that punitive damages are recoverable in a nondeliberate or unintentional tort where the defendant's conduct constitutes a conscious disregard of the probability of injury to others." *Grimshaw,* 174 Cal.Rptr. at 383 (citations omitted). The *Grimshaw* court made this pronouncement on the history of punitive damage law relying on prior decisional law. *Id.*

The California Legislature codified the judicial interpretation of the types of malice required for punitive damage liability when it amended Civil Code section 3294 to include the following definition of malice: " 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or

Direct implied malice would not, on the other hand, be present in the absence of some "conscious" wrongdoing that can be attributed to the corporation itself. For example, in Jeep Corp. v. Murray, 101 Nev. 640, 651, 708 P.2d 297, 304 (1985), malice was held to be missing in a product liability case involving design defects in the Jeep CJ-5. Unlike the *Grimshaw* case, the proof did not show corporate knowledge of a "dangerous tendency to roll" nor did it show any "conscious" corporate action which knowingly subjected Jeep operators to probable injury as was the case in *Grimshaw. Id.* Because the Jeep Corporation had not acted consciously or deliberately, and hence maliciously, this court affirmed the trial court's refusal to give punitive damage instructions. *Id.*

In *Nevada Cement, Murray* and *Grimshaw* the malice in question is that of the corporate entity itself. It is the "institutional mentality" of the corporation (*Grimshaw,* 174 Cal.Rptr. at 384) that is guilty of this kind of implied malice and which can be blamed for injuries to others even though the corporation had no plan to injure any specific person. It is the corporate entity *itself* that is acting maliciously in these cases. In *Nevada Cement* and *Grimshaw* the corporations, as corporations, acted wrongfully in their corporate guise. Their acts were not intended to do particular harm in the sense that the infliction of injury was not the corporation's "conscious object"; rather the corporate decisions were *known* by corporate management to be likely to produce injury to others. Such corporations are guilty of direct implied malice.

A corporation may also be derivatively liable for malice, express or implied. A management employee may in the course and scope of managerial operations intend to injure someone. The corporation would then be held vicariously liable for the express malice of its managing agent. An example of indirect or vicarious corporate liability for punitive damages can be found in the case Cerminara v. California Hotel and Casino, 104 Nev. 372, 760 P.2d 108 (1988). In *Cerminara* we recognized the right of an injured plaintiff to recover punitive damages against a corporation where there is an act of malice "on the part of any officer, director or managing agent of the corporation." *Id.* at 378, 760 P.2d at 111.

I would hold that a corporation could also be liable vicariously

despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1) (West Supp. 1990). This amendment did not change the malice required for punitive damages but rather made clear, as had decisional law, that implied malice would support an award of punitive damages. *See* Krusi v. Bear, Stearns & Co., 192 Cal.Rptr. 793, 802 (App. 1983).

for the *implied* malice of its "officer, director or managing agent," absent the kind of direct corporate action found in *Nevada Cement* and *Grimshaw*. For example, if the general manager of Circus-Circus actually had known that a criminal assault was the probable consequence of maintaining the security system then in place, yet notwithstanding such knowledge continued at the same dangerous level of security, I would say that this corporate agent could be found guilty of implied malice and that such malice could be imputed to the corporation.

In the case at hand there appears to be no *direct* malice on the part of Circus-Circus Corporation. There is no direct corporate action, as there was in *Nevada Cement* and *Grimshaw,* which was either intended to harm or which showed an irresponsible, conscious disregard for the safety of others.

If corporate malice is to be found in this case, it must be derivative in nature, derived vicariously from the malicious acts of the corporation's officers, directors or managing agents. Since there is no evidence that any agent of the Circus-Circus Corporation intended to injure Craigo, the only possible malice than can be attributed to the Circus-Circus Corporation is *implied* malice on the part of a managing agent of the corporation. I now consider the question of whether any agent of the Circus-Circus Corporation has been guilty of implied malice that can be imputed to Circus-Circus.

### Malice in Wonderland

The plurality is "constrained to observe that if this court had recognized malice in law (implied malice) as a basis for proving malice under NRS 42.010" it would be compelled to affirm the punitive award because there is "ample evidence in the record proving disregard by management level personnel at Circus-Circus of safety measures reasonably necessary to remedy hazardous conditions in its parking garage." I, of course, agree with the plurality opinion that there is ample evidence that management failed properly to regard "reasonably necessary" safety measures to remedy hazardous conditions in the garage. This failure to use reasonable care, this failure to "remedy hazardous conditions," is called *negligence.* The trial court awarded $45,000 as compensation for the injuries suffered by reason of this negligence. I have no quarrel at all with Craigo's being compensated for his injuries. What I quarrel with is punishing Circus-Circus for malicious misconduct in what is essentially a negligence, maybe even a gross negligence, case.

Although there is evidence in this case that the general manager was made aware of reports of criminal activity in the parking garage (mostly vandalism and petty theft), and although, as

charged by Craigo, management took "no steps to remedy the situation," I see this kind of a failure to attend properly to duty as negligence, not malice. No officer, director or managing agent can be seen as having engaged in the kind of conscious wrongdoing which constitutes malice, express or implied.

There is some focus in this case on the general manager as the source of punitive damage liability. The general manager did have notice of an array of petty crime in the parking garage area and probably had a duty to "do something" about security in that area. This is a far cry, however, from saying that the manager consciously disregarded a known danger—that he knew a physical assault in the garage was imminent and nevertheless acted (or failed to act) in a manner that he knew would probably result in physical injury by criminal assault.

Craigo's counsel argued that malice was present because management "recklessly disregarded known safety measures." Those safety measures included increasing the number of security officers and installing electronic surveillance devices. If we were to accept the assumption that safety measures of this kind are generally "known" to increase the level of security, this is not to say that failing to increase safety measures amounts to anything more than failing to exercise due care. If the general manager *knew* that security could be improved by increasing the number of security personnel or by installing electronic devices, this does not mean that he *knew* that in the absence of increased security a criminal assault such as occurred in this case was probably going to happen. Absent the second-mentioned kind of knowledge, knowledge that certain decisions would probably result in injury, there can be no implied malice as I have described it. As I have indicated, the manager may be seen to have been "reckless" or to have exhibited "unconscionable irresponsibility," *Filice,* 90 Nev. at 315, 526 P.2d at 89, in failing to attend to "known safety measures," but his is not malice. No agent of Circus-Circus can be said to have been aware or conscious of the probability that a criminal assault was going to be the probable or "necessary consequence" of any management decision or decisions in this regard. I would absolve Circus-Circus from punitive damage liability for this reason.

In today's society one never knows when or where a murder, a robbery, or a mugging is going to occur. It is hard to conceive of a specific decision that the corporation itself or individuals in management positions could have made that would have prevented crimes from occurring in its parking garage, or any place else. There is no evidence that Circus-Circus, directly or vicariously, made a deliberately wrongful decision, the necessary or probable result of which would have been the robbery and battery of Craigo or other patrons.

The type of punishment-deserving conduct contemplated by the term "malice" is not present under the facts of this case; and no malice has been "brought home" to the Circus-Circus Corporation. 2 S. Speiser, *supra*.

## Conclusion

Since "[t]hree justices shall constitute a quorum for the transaction of business," NRS 2.140, there is, with the filing of this opinion, no binding ruling on what really means "malice, express or implied" in this state.[7] I have presented a proposed rule for defining and applying the statutory expression, "malice, express or implied," for the purpose of determining liability for punitive damages. The rule that I propose is, in my opinion, consistent with both the statute and our cases. I hope that the rule which I offer will be of some guidance to the trial courts until such time as a majority of this court or the legislature expresses itself on the subject. I consider my suggested application of the concept of implied malice to be quite guarded and very much in harmony with the cautious position of the American College of Trial Lawyers which is cited in the plurality opinion and in my footnote 2. I agree particularly with that portion of the College of Trial Lawyers report which recommends that punitive damages be reserved to those extreme cases reflecting cognitive behavior that is outrageous and indicative of bad motive or evil mind. Plurality Opinion at 8 and at 8 n.5. Certainly knowingly installing dangerous automobile gas tanks, knowlingly purveying dangerous medicines or knowingly poisoning the atmosphere would be cognitive behavior that is indicative of bad motive and evil mind. The worrisome side of the plurality opinion is that under it this kind of outrageous "cognitive behavior" would go unpunished by punitive damages. If the manager had made a conscious decision not to increase security even if he knew that this would probably result in criminal assaults on patrons, then he and Circus-Circus should be liable for punitive damages. This is not the case, but if it were, I think that punitive damages would be in order.

MOWBRAY, J., dissenting:

Respectfully, I dissent.

Craigo while a guest in the Circus-Circus casino-hotel was criminally assaulted and robbed. He sued seeking compensatory

---

[7]*See* Forrester v. Southern Pacific Co., 36 Nev. 247, 281 (1913). "As EARLE, J., did not participate in the decision in the Quigley case, any statements in the opinion of HAWLEY, C. J., and BEATTY, J., in which both did not concur, are not binding as law because lacking the concurrence of a majority of the court."

and punitive damages. The case was tried before the court sitting without a jury. The district judge as the trier of fact found in Craigo's favor and awarded him both compensatory and punitive damages. Circus-Circus seeks reversal of the punitive damage award. I would affirm the award. The evidence in this record is substantial. It adequately supports the decision of the fact finder, the district judge.

On appeal, Circus-Circus suggests that the award of punitive damages in the instant case was error. I do not agree. Craigo as a guest in the casino-hotel had a right to be treated as such and not to be criminally assaulted and robbed. Circus-Circus had a duty to secure the safety and security of its guests who are entitled to nothing less. In my opinion, Circus-Circus should have taken the necessary steps to eradicate the criminal element that hide and prey in the parking area, halls and elevators of its premises for the purpose of criminally assaulting and robbing the unsuspecting guests who patronize its place of business. This, as I see it, is the bottom line and real predicate for the award by the district court of punitive damages which I would affirm.