ROSE E. WICKLIFFE, APPELLANT AND CROSS-RESPONDENT, *v.* FLETCHER JONES OF LAS VEGAS, INC., DBA FLETCHER JONES CHEVROLET, RESPONDENT AND CROSS-APPELLANT.

No. 13506

April 29, 1983                    661 P.2d 1295

---

354

*Rickdall & Shulman,* Las Vegas, for Appellant and Cross-Respondent.

*Dickerson, Miles, Pico & Mitchell,* and *Eleissa C. Lavelle,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

The instant appeal arises out of the conversion of an automobile. Appellant Rose E. Wickliffe brought an action against respondent Fletcher Jones of Las Vegas, Inc., doing business as Fletcher Jones Chevrolet (Fletcher Jones) for the tortious conversion of an automobile. Although the jury awarded appellant compensatory damages, the trial court precluded the jury from considering appellant's claim for punitive damages. In our view, this was error. Accordingly, we remand the case to afford appellant an opportunity to present her claim for punitive damages.

In September, 1978, appellant leased a new Mercedes Benz from respondent Fletcher Jones. In turn, Fletcher Jones assigned this lease to Cen Val Leasing Corporation (Cen Val). In October, 1978, appellant was telephoned by "Buddy" Petcock, an employee of Fletcher Jones. Petcock told appellant that Fletcher Jones wanted her to bring in her second car, an Oldsmobile, in order to have it appraised and sold. Appellant was leasing the Oldsmobile from another dealer, and Cen Val was apparently concerned that appellant was leasing two automobiles. Petcock informed appellant that, as a result, Fletcher Jones was "having difficulty obtaining their money" from Cen Val.

The Mercedes lease agreement did not contain any term or provision requiring the termination of appellant's lease on the second automobile. Appellant informed Petcock that she would not close out the lease on the Oldsmobile because she wanted to retain the second vehicle. With this exchange, the conversation ended. Petcock made no threat to cancel the lease of the Mercedes, and there was no implication that Fletcher Jones might seek to recover the vehicle if appellant did not terminate the second lease.

Shortly after her conversation with Petcock, appellant returned the Mercedes to Fletcher Jones for routine servicing. When appellant returned for the car the following day, Petcock informed her that Cen Val had put a "hold" on the car, and told appellant the car would not be returned unless she agreed to close out the lease on the Oldsmobile. Appellant refused this demand, and a heated exchange ensued between appellant and Petcock. Appellant's sister, who witnessed the confrontation, testified that when appellant told Petcock the auto dealer would hear from her lawyers, he told her, "Fletcher Jones had lawyers on retainer for little asshole cases like this." At this point, appellant left Fletcher Jones, and the dealer remained in possession of the Mercedes.

It is undisputed that, at the time Petcock refused to return the Mercedes, appellant was not in default on her lease. Further, Cen Val had apparently not placed a "hold" on the car.[1] Despite the fact Fletcher Jones was not entitled to possession of the vehicle, the dealer made no attempt to contact appellant for ten days. At this point Fletcher Jones apparently realized it might be in a precarious legal position, and Petcock telephoned appellant with suitably obsequious apologies. Petcock told

---

[1]Cen Val was named in appellant's initial complaint. After discovery it became apparent that the leasing company had not authorized or participated in the seizure of the Mercedes. Accordingly, appellant accepted Cen Val's offer of judgment, and Cen Val is not a party to this appeal.

appellant she could come down and pick up her car, but appellant refused on the grounds that she could not trust Fletcher Jones anymore and could not do business with the dealer. Some time later Fletcher Jones apparently parked the Mercedes in front of appellant's home and surreptitiously slipped the keys behind her screen front door. Appellant refused to use the car, and some three months later it was finally removed.

Appellant subsequently brought an action against Fletcher Jones for conversion. At the close of appellant's case-in-chief, appellant's claim for punitive damages was dismissed over objection pursuant to a motion filed by Fletcher Jones. The district court concluded that there was "no genuine issue of material fact, even taking all the evidence in a light most favorable to" appellant on the issues of malice, fraud or oppression. Appellant was permitted, however, to go forward with her underlying cause of action for conversion. At the end of trial, appellant renewed her argument that she should be permitted to present her punitive damages claim to the jury. The district court refused to instruct the jury on punitive damages, and a verdict was subsequently entered in appellant's favor for compensatory damages alone.

In refusing the requested jury instruction, the district court erred. This court has recognized the right of a plaintiff to recover punitive damages in certain circumstances in order to punish a defendant for his conduct. Allen v. Anderson, 93 Nev. 204, 207, 562 P.2d 487 (1977). In an action for the breach of an obligation not arising from a contract, the plaintiff may recover punitive damages in addition to actual damages if the defendant has been guilty of "oppression, fraud or malice, express or implied." See NRS 42.010. It is the responsibility of the trial court to determine whether, as a matter of law, the plaintiff has offered substantial evidence of malice in fact to support a punitive damages instruction. See Bader v. Cerri, 96 Nev. 352, 359, 609 P.2d 314 (1980); Village Development Co. v. Filice, 90 Nev. 305, 315-316, 526 P.2d 83 (1974).

This court has previously upheld punitive damage instructions and awards arising out of wrongful repossessions. See Nevada National Bank v. Huff, 94 Nev. 506, 582 P.2d 364 (1978); Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974); Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972). In the instant case, an analysis of Fletcher Jones's conduct indicates there was sufficient evidence presented of "oppression, fraud or malice, expressed or implied"

to support a punitive damage instruction. Fletcher Jones conceded that appellant was not in default on her lease, and that Cen Val had not placed a "hold" on the vehicle. Nonetheless, when circumstances placed the automobile under Fletcher Jones's control, it appears the dealer attempted to force appellant to accede to its demands on pain of not regaining possession of her car. When appellant objected to Fletcher Jones's actions and attempted to assert her rights under the leasing contract, the record indicates she was informed by a Fletcher Jones employee that the dealer's retention of legal counsel allowed it, in effect, to engage in such cavalier and oppressive conduct with impunity. Finally, when Fletcher Jones realized appellant would not bow to its demands, it may be inferred that the dealer attempted to force appellant to take back the Mercedes by parking the car in front of her home and surreptitiously returning the keys. This conduct could properly have been found to be "wrongful conduct [that] was willful, intentional, and done in reckless disregard of its possible results." Caple v. Raynel Campers, Inc., 90 Nev. at 344.

As appellant's theory of the case was supported by the evidence, the district court erred in failing to instruct the jury with respect to punitive damages. *See* American Cas. Co. v. Propane Sales & Serv., 89 Nev. 398, 400, 513 P.2d 1226, 1227 (1973); Rocky Mtn. Produce v. Johnson, 78 Nev. 44, 52, 369 P.2d 198, 202 (1962). There remains, however, the question of the appropriate remedy. Appellant, who won the case and was awarded compensatory damages, asks that we affirm the judgment but remand the cause for the limited purpose of allowing the jury to determine punitive damages. Of course, the jury has been discharged and cannot perform this assignment. *See* Bader v. Cerri, 96 Nev. at 358. We see no reason, however, why appellant should have to litigate for a second time issues relating to the conversion and compensatory damages which are not challenged by Fletcher Jones. Accordingly, this case is remanded for a limited new trial on the issue of punitive damages. *Cf.* Finnell v. Bromberg, 79 Nev. 211, 381 P.2d 221 (1963).

In addition to remanding the case for a limited new trial, we dismiss respondent Fletcher Jones's cross-appeal. Before trial, Fletcher Jones made an offer of judgment in the amount of $5,000 plus costs pursuant to NRCP 68.[2] Appellant obtained a

[2]NRCP 68 provides in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer

judgment against Fletcher Jones of $5,141.56, a sum which included prejudgment interest. In its cross-appeal, Fletcher Jones argues that the district court erred in failing to award costs and attorney's fees to the dealer, as Fletcher Jones's offer of judgment ($5,000 plus $147.50 in costs incurred to the time of trial) was greater than the $5,141.56 recovered by appellant.

Fletcher Jones's argument is without merit. We note that the offer of judgment is defective on its face. The offer was made March 19, 1981, and states it would remain in effect until March 27, 1981. Thus, the offer was open for a maximum of *nine* days. NRCP 68, however, affords a party who is served with an offer of judgment *ten* days to accept. The offer of judgment failed to comply with NRCP 68 in a material aspect, and therefore was defective. *Cf.* Conolly v. S.S. Karina II, 302 F.Supp. 675 (E.D.N.Y. 1969) (offer of judgment fatally defective where it gave less than notice required, omitted costs and was less than amount of judgment including interest). Accordingly, the district court did not err in failing to award costs and attorney's fees to Fletcher Jones.

The other issues raised by the parties have been considered and are without merit. Accordingly, the case is remanded for a limited new trial on the issue of punitive damages.

---

to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. *If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted,* either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall not recover costs, nor attorneys' fees, but shall pay the costs and attorneys' fees, if any be allowed, of the party making the offer from the time of the offer. (Emphasis added.)