NEC CORPORATION, A NEVADA CORPORATION, APPELLANT, v. DONNA BENBOW, WILLIAM PEARCE, KATHLEEN PEARCE, JIM CLARKSON, SHIRLEY CLARKSON, PHILLIP MASON, SHERRY DEMENT, SAMUEL GOODMAN, MILDRED GOODMAN, BOB WINCHURCH, AND JENNY WINCHURCH, RESPONDENTS.

No. 18641

May 23, 1989                                      774 P.2d 1033

[Rehearing denied June 7, 1989]

*Digesti & Peck,* Reno for Appellant.

---

[8]The Honorable Mario G. Recanzone, Judge of the Third Judicial District, was designated by the Governor to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice. Nev. Const., art. 6, § 4.

*Lionel Sawyer & Collins* and *Richard W. Horton,* Reno, for Respondents.

# OPINION

*Per Curiam:*

Appellant, NEC Corporation ("NEC"), appeals the district court's order granting judgment n.o.v. and an addendum to that order. NEC sued respondents, Donna Benbow, William Pearce, Kathleen Pearce, Jim Clarkson, Shirley Clarkson, Phillip Mason, Sherry Dement, Samuel Goodman, Mildred Goodman, Bob Winchurch and Jenny Winchurch, eleven tenants of a manufactured home subdivision, for unlawful detainer and back rent. The tenants counterclaimed for breach of contract, harassment, trespass and punitive damages. The jury returned a unanimous verdict finding that (1) NEC had not breached any contracts and was entitled to back rent, and that (2) the tenants were entitled to compensatory damages for harassment. The district court granted the tenants judgment n.o.v. and eliminated the jury's award of back rent. The district court issued an addendum to the judgment allowing the tenants to remain on their lots at reduced rents until NEC performed its contracts. On appeal, NEC contends that the district court erred in granting the tenants judgment n.o.v. and that the district court's addendum is void. We agree.

In 1973 and 1974, Dr. Clyde Emery and his wife ("the Emerys") constructed a mobile home rental park known as Glen Meadows on unimproved real property they owned on the Truckee River near Verdi. The Emerys originally operated the park under the fictitious name of IDM Enterprises and later transferred the park to NEC, a corporation owned and controlled by them. During 1981 the Emerys decided to convert the park into a mobile home subdivision.

The Emerys hired several people to assist in the conversion, including an engineering firm, land planners and a public relations firm, Brodeur-Martin. A Brodeur-Martin representative held meetings with the park tenants to explain the conversion process. It was represented to the tenants that there would be no rent increases until the conversion was complete and that they would have the option of purchasing their lots or continuing to rent.

Brodeur-Martin mailed all tenants a letter regarding the proposed conversion. Several commitments regarding lot prices, financing and control of the homeowners' association were made to the tenants to obtain their support for the conversion. Respondents, Samuel and Mildred Goodman, Bob and Jerry Winchurch and Phillip Mason (the long-term tenants), claim rights based upon these commitments.[1]

Respondents, Donna Benbow, William and Kathleen Pearce, Jim and Shirley Clarkson and Sherry Dement (the newer tenants), purchased homes from the Emerys during the conversion process and became tenants under separate agreements, which set their lot rents and established either set prices or not to exceed prices for their respective lots.

Approval to convert the park was obtained in April, 1984, and offers of sale were mailed to the tenants. The offers were mailed on a Wednesday and received by most tenants on the following Friday. The offers gave the tenants until the following Monday to deposit $1,000.00 in escrow to secure the offer. Each tenant was also given a copy of the subdivision covenants, codes and regulations (CC&R's).

The long-term tenants asserted that the offers did not conform to the commitments made to them in the Brodeur-Martin letter. The newer tenants asserted that the offers did not comply with their agreements. New offers were made to the tenants in November, 1984, which were at or below the prices offered in April. The tenants maintained that the offers did not comply with their agreements because the CC&R's were unreasonable and the lot prices were based on a disputable appraisal.

In January of 1985, the Emerys through NEC sent new leases to the tenants increasing their monthly rent. The tenants did not sign the leases and continued to pay their lot rent under their expired leases. The Emerys, through NEC, served notices to pay rent or quit the premises.

In July, 1985, this action was filed against the tenants for unlawful detainer and back rent. The tenants answered and by counterclaim and a third-party complaint sought specific performance of the contract to sell the lots, and damages for trespass and breach of their right to quiet enjoyment.[2] During the jury trial the tenants testified concerning representations made to them and the Emerys' harassment of them by barricading roadways, shutting off water and serving multiple legal notices. NEC presented testimony concerning negotiations to sell the lots, that roads were only barricaded to divert traffic to the sales office, that water was

---

[1]Phillip Mason died before trial and his estate succeeded to his rights.

[2]The tenants subsequently stipulated to a dismissal of their claim for specific performance.

only shut off to vacant homes, and that the legal notices sent were required. Conflicting testimony was presented regarding the CC&R's and the validity of the appraisal used in setting lot prices for the November offers.

The jury returned a unanimous verdict finding that (1) the Emerys had not breached any contracts and were entitled to $75,683.26 in back rent, and that (2) the tenants had been harassed and were entitled to $94,300.00 compensatory damages, the exact amount that it would cost them to remove their homes from the subdivision. The jury declined to award punitive damages.

The district court concluded that reasonable people could not have concluded that contracts did not exist with the tenants or that proper offers had been made to the tenants in accordance with those contracts. The district court questioned the jury's verdict as internally inconsistent, concluding that the finding of constructive ouster (harassment) was inconsistent with the award of back rent stemming from legitimate offers and holdover. The district court granted the tenants judgment n.o.v. by eliminating the jury's award for back rent. The district court filed an addendum the next day declaring that the tenants could remain in possession of their lots at their present rental rates until the Emerys made offers in accordance with the contracts. This appeal followed.

NEC contends that the district court erred in granting the tenants judgment n.o.v. Specifically, NEC contends that the district court second-guessed the jury with respect to the existence of enforceable contracts or Emerys' breach of any contracts and thereby ignored substantial evidence that supported the jury's contrary conclusions. We agree.

The standard for review of a judgment n.o.v. is whether the evidence is such that reasonable men would have necessarily reached a different conclusion. Drummond v. Mid-West Growers, 91 Nev. 698, 542 P.2d 198 (1975); Wilkes v. Anderson, 100 Nev. 433, 683 P.2d 35 (1984). When considering a motion for judgment n.o.v., the evidence must be viewed in a light most favorable to the nonmovant, and that party must be given the benefit of every reasonable inference from any substantial evidence supporting the verdict. Jeffers v. Kaufman Machinery, 101 Nev. 684, 707 P.2d 1153 (1985). Neither the credibility of the witnesses nor the weight of the evidence may be considered. Wilkes v. Anderson, *supra*. Judgment n.o.v. should be granted when there is only one reasonable conclusion *without* weighing the evidence. *See* Bates v. Chronister, 100 Nev. 675, 691 P.2d 865 (1984); Trustees, Carpenters v. Better Building Co., 101 Nev. 742, 710 P.2d 1379 (1985). If there is conflicting evidence or if the evidence is insufficient for a one-way verdict, judgment n.o.v. should not be granted. *Bates, supra.*

The district court erred in granting the tenants a judgment n.o.v. because reasonable men could have reached different conclusions based upon the evidence presented. Although a different verdict might have been reached, more than one reasonable conclusion existed. The evidence presented was conflicting and insufficient for a one-way verdict. The jury could have reasonably concluded from the evidence that enforceable contracts did not exist between the parties or that any existing contracts had been fulfilled. Therefore, the district court erred in granting the tenants a judgment n.o.v. Accordingly, the district court's grant of judgment n.o.v., as well as the addendum, is reversed and the jury's verdict is reinstated.

STEFFEN, A. C. J., SPRINGER, MOWBRAY and ROSE, JJ.,and GAMBLE, D. J.,[3] concur.