SMITH'S FOOD & DRUG CENTERS, INC., APPELLANT, v. ARGENTINE BELLEGARDE, RESPONDENT.

No. 27883

May 28, 1998 958 P.2d 1208

*Barker, Gillock, Koning & Brown* and *Jerry S. Busby,* Las Vegas, for Appellant.

---

"THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.

*Sabbath & Associates, Chtd.,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order denying appellant's motion for

judgment notwithstanding jury verdict or, in the alternative, for new trial. The primary claim of error is addressed to the district court's refusal to strike an award of punitive damages against a corporate defendant where the jury failed to impose punitive liability on corporate employees. We affirm.

## FACTS

On October 19, 1989, respondent Argentine Bellegarde ("Bellegarde"), a twenty-four year old Haitian immigrant, was accused of shoplifting by employees of a Smith's Food & Drug Center ("Smith's") in Las Vegas. The store in question was the nationwide leader among Smith's outlets in shoplifting losses. Sheila Holoubek ("Holoubek"), normally a "key manager" in charge of cashiers, was acting as temporary store manager at the time of the incident. Holoubek was not formally trained in company procedures for detecting and handling shoplifters. Prior to assuming her responsibilities on the day in question, her only instructions had been to inform a "manager" upon observation of shoplifting activity.

At some point during her shift, Holoubek thought she saw Bellegarde place a pack of chewing gum in her purse. About forty-five minutes later, Holoubek, a security guard and several "box boys" confronted Bellegarde in the parking lot of the store, at which time Holoubek requested permission to search Bellegarde's purse. Bellegarde, who was accompanied by a friend, agreed on the condition that police be called to witness the search. Bellegarde and the friend were then escorted to an upstairs office inside the store.

Although police initially refused Holoubek's request to respond to the scene, the dispatcher instructed Holoubek to search the purse and call back if the package of chewing gum was located. During this time, Bellegarde's friend left the room to make a separate call to the authorities. Bellegarde remained behind in the room with Holoubek, the security guard and two other Smith's employees, Brett Wood ("Wood") and Robert Peterson ("Peterson"). The security guard, Jeffrey Qualls ("Qualls"), then attempted to take the purse from Bellegarde, who was sitting in a chair with the purse clutched to her body. Encountering resistance, Qualls sprayed Bellegarde with pepper spray and then, along with Wood and Peterson, placed her in handcuffs.

The chewing gum was never found. A second call to police resulted in their formal intervention, after which Qualls attempted to remove the handcuffs. Because the key to the handcuffs became jammed in the lock, a locksmith was required to

effect removal. Bellegarde was then taken by ambulance to a local hospital for treatment of an irritated left eye and a swollen wrist.

Bellegarde originally brought suit solely against Smith's, in which she lodged claims of assault and battery, false imprisonment, unlawful detention, violations of NRS 598.030(3), intentional infliction of emotional distress, slander per se, negligence and negligent infliction of emotional distress. The district court subsequently allowed Bellegarde to amend her complaint to add Qualls, Holoubek, Peterson and Wood as party defendants. Claims for punitive damages were lodged against each of the individual defendants and the corporation.

During trial, Bellegarde dropped her causes of action alleging violations of NRS 598.030(3), slander per se, negligence, and negligent infliction of emotional distress. The claims ultimately presented to the jury were restricted to those involving intentional misconduct.

The jury returned verdicts of $500.00 in compensatory damages against each defendant. By special interrogatory as to whether the conduct of the defendants, or any of them, warranted the imposition of punitive damages, the jury determined that the claim for punitive liability should go forward only as to Smith's. *See* NRS 42.005. Thus, the jury refused to consider the claim against the individual defendants.

Smith's objected to the special verdict findings on the ground that the imposition of punitive liability against a corporate principal could not be reconciled with the exoneration of the employees who were implicated in the alleged malicious conduct. The district court denied Smith's request for renewed deliberations to resolve the inconsistency or for entry of judgment notwithstanding the verdict.

Following bifurcated proceedings, the jury awarded punitive damages against Smith's in the amount of $65,000.00. The district court thereafter denied a renewed motion for judgment notwithstanding the verdict or, in the alternative, for new trial. Smith's appeals.

## DISCUSSION

### Standard of Review

On review of a denial of a motion for judgment notwithstanding the verdict, this court will view the evidence "in a light most favorable to the nonmovant, and that party must be given the benefit of every reasonable inference from any substantial evidence supporting the verdict." NEC Corp. v. Benbow, 105 Nev. 287, 290, 774 P.2d 1033, 1035 (1989). Further, "[t]he decision to grant or deny a motion for a new trial rests within the sound

discretion of the trial court and will not be disturbed on appeal absent palpable abuse.'' Pappas v. State, Dep't Transp., 104 Nev. 572, 574, 763 P.2d 348, 349 (1988).

*Legal Foundation to Sustain the Award of Punitive Damages Against Smith's*

We are asked to decide whether, as a matter of law, a jury's specific refusal to impose punitive liability against corporate employees implicated in malicious or oppressive conduct forecloses punitive liability against the corporate employer.

Punitive damages under NRS 42.005 may be awarded when ''it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied.'' The trial court is responsible to determine, as a matter of law, whether the plaintiff has offered substantial evidence of malice, in fact, to support a punitive damage instruction. Wickliffe v. Fletcher Jones of Las Vegas, 99 Nev. 353, 356, 661 P.2d 1295, 1297 (1983). Thus, the district court is charged in the first instance with determining whether instructions on punitive damages are warranted. Nevada Cement Co. v. Lemler, 89 Nev. 447, 451, 514 P.2d 1180, 1182 (1973).

Once instructed, the jury is not required to award punitive damages, even if it finds that a defendant's acts were oppressive or malicious. Such awards lie solely within the discretion of the jury. *See Nevada Cement,* 89 Nev. at 451, 514 P.2d at 1182. We will not disturb an award of punitive damages unless the trial record lacks substantial evidence to support it. First Interstate Bank v. Jafbros Auto Body, 106 Nev. 54, 56, 787 P.2d 765, 766 (1990).

The district court instructed on two separate theories of punitive liability, to wit: liability under the doctrine of respondeat superior (''vicarious liability'') (jury instruction no. 36),[1] and complicity liability (jury instruction no. 34).[2]

---

[1]Jury instruction no. 36 provided:

> Smith's Food and Drug Centers is a corporation and as such can act only through its officers and employees. Any act or omission of an officer or employee within the scope of his authority or employment is in law the act or omission of such corporation.

This instruction, by itself, does not refer to punitive damages. However, the arguments of the parties on appeal are based on the assumption that the instruction governs the imposition of punitive liability, if any, under a ''vicarious liability'' theory.

[2]Jury instruction no. 34 provided:

> Punitive damages may be awarded against an employer for acts of

On appeal, Smith's contends that respondeat superior liability, otherwise known as the "vicarious liability rule," was the only theory under which Smith's could be assessed punitive damages. Smith's argues that, because its employees were exonerated on the punitive damage claims, Smith's should be exonerated as well.

*Exoneration of the Agents for Punitive Liability*

The district court below submitted a special interrogatory to the jury asking the following:

> Does the conduct of Defendants, or any of them, warrant the imposition of punitive or exemplary damages?

The jury responded in the negative as to each of the employees and in the affirmative as to Smith's. Smith's contends the jury's responses constitute specific findings that the conduct of the employees was not malicious or oppressive, thus precluding an assessment of punitive damages against Smith's. We disagree.

Generally, punitive damages cannot be assessed against a principal for an agent's tortious acts unless the conduct of the agent would warrant assessment of such damages against him. However, the refusal of the factfinder to award punitive damages against an employee does not necessarily compel the conclusion that the employee's acts were without malice. Browand v. Scott Lumber Co. Inc., 269 P.2d 891, 895 (Cal. Ct. App. 1954). The jury in this case was asked only whether any of the defendants should be the subject of "punishment." It was not asked to make a specific finding as to the nature of the acts of the employees involved in this misadventure. Simply stated, the refusal to punish is not tantamount to a finding that no malicious or oppressive conduct was proved. Whether any defendant merits punishment is within the sound discretion of the jury.

Substantial evidence in this case suggests that the malice of the employees would have justified the imposition of punitive damages against them.[3] The acting manager of the store and other

---

employees if you find by preponderance of the evidence that the employer authorized or ratified the conduct which is found to be oppressive, malicious, or fraudulent, or if the employer had advance knowledge and consciously disregarded or authorized or ratified an act of oppression, fraud or malice.

[3] It was unnecessary for Bellegarde to amend her complaint to join the individual employees as party defendants to insure the viability of the punitive damage claim against Smith's. A special interrogatory regarding the behavior of the employees would have been sufficient to lay a foundation for punitive liability against Smith's.

employees confined Bellegarde to a small room for a lengthy period of time on the erroneous suspicion that she had stolen a package of chewing gum. Thereafter, employees seized her purse, sprayed her with "pepper spray" and placed her in handcuffs. They did not remove the handcuffs for over thirty minutes. As a result, Bellegarde sustained personal injuries requiring hospitalization. Giving her the benefit of every reasonable inference from any substantial evidence supporting the verdict, we conclude that the jury could have found that the conduct of Smith's employees was malicious or oppressive, even though the jury decided not to punish the individual employees.[4]

*Employer's Punitive Damages Liability for Malicious Acts of Its Agents*

Having concluded that the jury could have found that employees of Smith's acted maliciously or oppressively, we now consider whether Smith's could be held liable for their misconduct. It is well settled that a corporation can act only through its agents. Edwards v. Carson Water Co., 21 Nev. 469, 485 (1893). Any act or omission of a corporate officer or employee within the scope of his employment is, as a matter of law, the act or omission of such corporation. *Id.*

Courts have long recognized the imposition of vicarious liability for punitive damages as a deterrent to tortious misconduct. *See* Goddard v. Grand Trunk Ry., 57 Me. 202, 223-24 (1869). In Nevada, with regard to an employer's liability for punitive damages for the acts or omissions of its agents, this court's punitive damages jurisprudence suggests that two parallel rules of recovery exist in Nevada; to wit, the so-called "vicarious liability" and "complicity liability" rules. *See* Ramada Inns v. Sharp, 101 Nev. 824, 711 P.2d 1 (1985); Forrester v. S.P. Co., 36 Nev. 247, 134 P. 753 (1913). In *Ramada Inns* we summarized these rules as follows:

---

[4]With regard to the issue raised by the refusal of the jury to punish the individual employees, we note that Holoubek and Qualls were not employed by Smith's at the time of trial. Under these circumstances, we conclude that the jury could have reasonably determined that little or no deterrent value would be gained by the imposition of punitive damages against these former employees. Additionally, the record suggests that the other individual defendants, Peterson and Wood, were not aware of the events preceding the primary confrontations and were merely passive participants in this affair. Thus, rather than punish the employees, the jury had the option of singling out Smith's for punishment " 'to deter future misconduct of this kind.' " Guaranty Nat'l Ins. Co. v. Potter, 112 Nev. 199, 208, 912 P.2d 267, 273 (1996) (quoting Ace Truck & Equipment Rentals Inc. v. Kahn, 103 Nev. 503, 510, 746 P.2d 132, 137 (1987)).

> Appellant hotel contends that punitive damages may not be assessed against an employer for an act of his employee unless the employer either (1) authorized the act or (2) ratified or approved of the act resulting in an award of punitive damages. *See* Restatement (Second) of Torts § 909 (1979). This is otherwise known as the "complicity theory." Respondent, on the other hand, maintains that an employer is vicariously liable for acts of an employee which give rise to an award of punitive damages if the employee was acting within the scope of his employment. *See* Forrester v. S.P. Co., 36 Nev. 247, 134 P. 753 (1913). This is known as the "vicarious liability rule."

*Id.* at 825, 711 P.2d at 2. Rather than favor one rule of recovery to the exclusion of the other, we held in *Ramada* that substantial evidence existed to support the jury's verdict—punitive damages against the appellant corporation for the acts of its employees—under either the complicity theory or the vicarious liability rule. *Ramada,* 101 Nev. at 825, 711 P.2d at 2. Accordingly, we did not resolve the conflict between these rules.

In Forrester v. S.P. Co., 36 Nev. 247, 134 P. 753 (1913), this court was engaged in a discourse representative of the early stages of the development of our punitive damage law. In *Forrester,* this court imposed punitive liability on a railway company for the use of excessive force by its agent in ejecting the plaintiff from its train. We concluded that punitive liability was appropriate because "the train agent, in taking up the ticket and ordering the removal of Forrester from the train, was acting within the line of special authority which the company had given him to take up tickets and have passengers removed." 36 Nev. at 282, 134 P. at 763. The *Forrester* court noted that punitive liability may be imposed upon the principal if the agent, " 'in *doing the act which he is deputed to do,* does it in such a manner as would render him liable for exemplary damages, his principal is likewise liable.' " *Id.* at 284, 134 P. at 764 (quoting Rucker v. Smoke, 16 S.E. [40], 37 S.C. [371] [(1892)]) (emphasis added)). This suggests a rule of strict imputation of vicarious liability for punitive damages, tacitly reaffirmed in *Ramada.*

Although the railway company had not specifically authorized or ratified its employee's improper conduct, the *Forrester* court also noted that, even "[i]f it were admitted for the purposes of this case that . . . punitive damages cannot be recovered from a principal . . . for the act of the agent when the principal did not direct or ratify the act, it is still apparent that the jury could allow punitive damages [in this case.]" 36 Nev. at 282, 134 P. at 763. The court noted that:

By giving the train agent special authority to eject passengers and take up tickets, and allowing him extra compensation for invalid tickets taken up, and by refusing, after such notice and request for transportation, to give relief from [the train agent's] oppressive and wrongful acts in ejecting Forrester from the train, the company may be deemed to have ratified the act of their agent.

*Id.* Accordingly, *Forrester* is also the progenitor of our case authority on the subject of "complicity" liability for punitive damages.

Both *Forrester* and *Ramada* have been interpreted as adopting a rule of strict imputation for punitive damages liability—a pure vicarious liability rule, wherein any malicious act of an agent is automatically imputed to the principal—as well as a rule of complicity liability—a more conservative approach necessitating authorization or ratification by the principal.[5] This is demonstrated by the fact that, in this case, the jury was instructed on both theories of liability.

We take this opportunity to clarify this aspect of our punitive damages jurisprudence. We now exclusively embrace the Restatement (Second) of Torts § 909 (1977) approach with regard to an employer's liability for punitive damages for the acts or omissions of its agents:[6]

Section 909. Punitive Damages Against a Principal.

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

We conclude that the Restatement (Second) of Torts (1977)

---

[5]Most recently, this court reinstated an award of punitive damages pursuant to the complicity theory of liability in Cerminara v. California Hotel and Casino, 104 Nev. 372, 760 P.2d 108 (1988).

[6]*See* J. Ghiardi & J. Kirchner, *Punitive Damages Law and Practice,* ch. 24, at 36-39 (1987) (twenty-one states follow traditional respondeat superior rules, and nineteen follow the "complicity rule" embodied in the Restatement (Second) of Torts § 909).

approach, or "complicity theory," strikes the proper balance between protecting the public and ensuring that punitive damages are awarded because of an employer's own wrongful conduct.

The Restatement (Second) of Torts (1977) approach is consistent with jury instruction no. 34, given in the district court with regard to proof of authorization or ratification by Smith's.[7] Accordingly, we now analyze this case pursuant to the complicity theory of liability.

Complicity liability for punitive damages in this case was certainly justified based on the actions of Holoubek, the acting manager of the store. "In determining whether an agent acts in a managerial capacity, [the key] is to look to what the individual is authorized to do by the principal and to whether the agent has discretion as to what is done and how it is done. Job titles . . . should be of little importance." J. Ghiardi and J. Kirchner, *Punitive Damages Law and Practice,* ch. 24, at 15 (1987), cited with approval in *Cerminara,* 104 Nev. at 378, 760 P.2d at 111. First, Holoubek was unaware of any written policies or guidelines regarding shoplifters. Second, she was not trained in procedures for handling such problems. Third, she was given the discretion to determine "what is done and how it is done." Finally, the measures taken by Qualls, the security guard, were taken at Holoubek's instruction in accordance with the chain of command. Further, Smith's never punished or reprimanded the employees involved in the incident with Bellegarde. Even at trial, Smith's defended the actions of Holoubek and Qualls as reasonable and appropriate. Interpreting the evidence in a light most favorable to Bellegarde, we conclude that the jury could have reasonably determined that all of the acts were either authorized or ratified by Smith's through its managing agent, Holoubek.

Accordingly, the district court's judgment is affirmed.

---

[7]While jury instruction no. 34 does not include "managerial agent" language, we conclude that it is an accurate statement of the law provided in Restatement (Second) of Torts § 909. Further, the requisite exercise of managerial authority in this case is subsumed in the jury's finding that Smith's authorized or ratified Holoubek's conduct.