ABIGAIL RICHLIN SCHWARTZ, APPELLANT, *v.* JONATHAN SCHWARTZ, AS THE PERSONAL REPRESENTATIVE of MILTON I. SCHWARTZ, DECEASED, RESPONDENT.

No. 49313

March 4, 2010 225 P.3d 1273

*The Dickerson Law Group* and *Robert P. Dickerson* and *Denise L. Gentile*, Las Vegas, for Appellant.

*Sklar Williams LLP* and *Frederic I. Berkley*, Las Vegas, for Respondent.

Before HARDESTY, CHERRY and SAITTA, JJ.[1]

## OPINION

By the Court, CHERRY, J.:

This appeal concerns a divorce and the awarding of assets by the district court to appellant Abigail Schwartz based on several agree-

---

[1]THE HONORABLE MARK GIBBONS, Justice, voluntarily recused himself from participation in the decision of this matter.

ments entered into by Abigail and Milton Schwartz before Milton's death. The several agreements were entered into by Abigail and Milton before and during their marriage and include a reconciliation agreement entered into after a separation period.

In this opinion, we examine whether the district court abused its discretion in failing to award Abigail lump-sum alimony.

We conclude that the district court abused its discretion in failing to conduct a full and proper analysis of whether lump-sum alimony was appropriate in this case and hold that a district court should assess not only age disparity as set forth in *Daniel v. Baker*, 106 Nev. 412, 794 P.2d 345 (1990), but should also assess whether the life expectancy of the payor makes the award illusory. Accordingly, we reverse the district court's order regarding the award of alimony and remand for the district court to make a determination as to whether an award of lump-sum alimony was appropriate in this case.

### FACTS AND PROCEDURAL HISTORY

Milton and Abigail met in May 1992. At the time of their meeting, Abigail was a registered nurse practicing in Las Vegas. Abigail stopped working as a registered nurse at Milton's request in order for the couple to be able to travel.

Milton and Abigail were married in 1993. At the time of their marriage, Milton was 71 years old and Abigail was 41 years old. Prior to their marriage, Abigail and Milton entered into a premarital agreement.

In December 1994, Milton filed for divorce against Abigail. On December 24, 1996, after 19 months of separation, Milton and Abigail reconciled and certain promises were made by both spouses, and these promises were memorialized in a reconciliation agreement.

On April 19, 2006, Milton filed a second complaint for divorce against Abigail. Abigail filed an answer and counterclaim against Milton seeking equitable relief and damages. After a two-day bench trial, the district court entered its findings of fact, conclusions of law, and divorce decree. In part, the district court ordered Milton to pay Abigail spousal support in the amount of $5,000 per month for a period of seven years.[2]

Shortly after the district court entered its divorce decree, Milton and Abigail had dinner together at a restaurant in Las Vegas. During this dinner, Milton told Abigail that he was unhappy that they had obtained a divorce. Milton also expressed to Abigail that he

---

[2]The alimony awarded Abigail by the district court terminated upon Milton's death.

was considering reconciling and that if he was to marry again, Abigail was the only wife for him. In the days following this dinner, Milton and Abigail spoke several more times about possibly reconciling and remarrying.

After the reconciliation dinner, Abigail filed a motion to alter and amend the district court's findings of fact, conclusions of law, and decree of divorce based on Milton's statements at the reconciliation dinner. Included in Abigail's motion was a motion for a new trial. The district court denied Abigail's motion to alter and amend its findings of fact, conclusions of law, and decree of divorce and for a new trial in its entirety.[3] This appeal follows.

## DISCUSSION

Abigail argues that the district court abused its discretion in the amount of alimony it awarded to her and in failing to award her lump-sum alimony since Milton was in poor health at the time of the divorce proceedings and the alimony awarded her terminated at the time of Milton's death. Abigail contends that the district court erred in finding that this case was distinguishable from *Daniel v. Baker*, 106 Nev. 412, 794 P.2d 345 (1990), in which we reversed the district court's decision to award a monthly alimony payment that terminated upon the death of the payor and remanded with instructions to award permanent or lump-sum alimony. Abigail contends that, because of the age disparity between her and Milton, a lump-sum alimony award was required, and, thus, the district court abused its discretion in awarding alimony by not making such an award.

We will not disturb a district court's disposition of property or an award of alimony on appeal without a showing of an abuse of discretion. *Wolff v. Wolff*, 112 Nev. 1355, 1359, 929 P.2d 916, 918-19 (1996). "This court's rationale for not substituting its own judgment for that of the district court, absent an abuse of discretion, is that the district court has a better opportunity to observe parties and evaluate the situation." *Id.* at 1359, 929 P.2d at 919 (citing *Winn v. Winn*, 86 Nev. 18, 20, 467 P.2d 601, 602 (1970)).

NRS 125.150(1)(a) states that when granting a divorce, the district court may make an award of alimony, including a lump-sum award, "as appears just and equitable." In making this determination, this court has stated that "[m]uch depends on the particular facts of each individual case." *Forrest v. Forrest*, 99 Nev. 602, 606,

---

[3]After the divorce, Milton passed away and his son, respondent Jonathan Schwartz, represents Milton's interests in this matter.

668 P.2d 275, 278 (1983). This court has articulated seven factors to guide district courts in making alimony determinations. The factors a district court should evaluate include: (1) the career of the wife before marriage, (2) the duration of the marriage, (3) the education level of the husband during the marriage, (4) the marketability of the wife, (5) the ability of the wife to support herself, (6) whether the wife stayed home to care for the children, and (7) what the wife was awarded besides alimony and child support. *Sprenger v. Sprenger*, 110 Nev. 855, 859, 878 P.2d 284, 287 (1994). Additionally, ''it has long been the view of this court that we must presume in the case before us that proper regard was given by the trial court to a matter addressed to its consideration.'' *Buchanan v. Buchanan*, 90 Nev. 209, 216, 523 P.2d 1, 5 (1974).

 ██

We conclude that the district court did not abuse its discretion in the amount of alimony it awarded to Abigail. The district court analyzed the factors set out in *Sprenger* in making its alimony award. In making its alimony award, the district court specifically looked at: (1) the financial condition of the parties; (2) the nature and value of the parties' respective property; (3) the contribution of each party to property held by them; (4) the duration of the marriage; (5) Milton's income, earning capacity, age, health, and ability to labor; (6) Abigail's income, earning capacity, age, health, and ability to labor; (7) Abigail's reasonable post-divorce needs; and (8) the parties' station in life and gap in income. The district court was in the best position to hear and decide the facts of this case, and we will not substitute our judgment for that of the district court on this issue.

 ██

However, while the district court did not abuse its discretion in the amount of alimony, we conclude that the court failed to properly analyze whether the alimony should be awarded in a lump sum. The district court relied on our holding in *Daniel v. Baker*, 106 Nev. at 414, 794 P.2d at 346, in denying Abigail's request for lump-sum alimony. In *Daniel*, we held that the district court had abused its discretion in failing to award the wife lump-sum alimony because she had no earning potential and a longer life expectancy, while her husband had substantial wealth, was in poor health, and lump-sum alimony would not have depleted his assets. *Id.*

We must conclude that the district court abused its discretion in failing to do a full and proper analysis of whether lump-sum alimony was appropriate in this case, as the district court did not take Milton's health into account. Milton testified at trial, at which time he was 85 years old and Abigail was 55 years old, that he had end-stage kidney disease, was on dialysis three times a week, and

was in poor health. The district court should have taken Milton's poor health into account when making its determination of whether a lump-sum alimony award would have been proper in this case.

We thus hold that a district court should assess not only age disparity as set forth in *Daniel*, but also whether the life expectancy of the payor will make a non-lump-sum alimony award illusory. Along with the analysis set out in *Daniel*, the age and health of the payor should be taken into consideration when undertaking an analysis of whether lump-sum alimony is appropriate. *Id.* Specifically, a district court should look at the life expectancy of the payor at the time of making the alimony determination and take into account the payor's medical condition and prospects for healthy living. This analysis will help avoid an illusory alimony award when a payor is known to be terminally ill or known to have low prospects for continued healthy living since it will allow the payee to continue to receive alimony in a manner that will assure they are supported past the payor's death. As such, we remand this case back to the district court to complete its analysis of whether a lump-sum alimony award is appropriate in this case, taking into account Milton's age, health, and life expectancy in relation to the length of the alimony award.

We therefore reverse the district court's order with regard to the award of alimony and remand for the district court to perform a complete analysis of whether lump-sum alimony is appropriate in this case, consistent with our holding. We have carefully reviewed all other issues raised on appeal and determine that they lack merit. Accordingly, we affirm all other aspects of the district court's decision.

HARDESTY and SAITTA, JJ., concur.