# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE W.N.
CONNELL AND MARJORIE T.
CONNELL LIVING TRUST, DATED
MAY 18, 1972.

ELEANOR CONNELL HARTMAN
AHERN,
Appellant,
vs.
JACQUELINE M. MONTOYA; AND
KATHRYN A. BOUVIER,
Respondents.

No. 73837



FILED

MAR 29 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER AFFIRMING IN PART,*
## *VACATING IN PART, AND REMANDING*

This is an appeal from a district court order awarding damages in a trust action. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

### I.

Appellant Eleanor Connell Hartman Ahern was the sole trustee of the trust at issue, and respondents Kathryn Bouvier and Jacqueline Montoya, Ahern's daughters, were beneficiaries of a sub-trust of the trust at issue. In interpreting the trust, the district court found that Bouvier and Montoya were entitled to a 65-percent share of the trust's income and that Ahern's previous refusal to disburse trust income to her daughters was a violation of her fiduciary duties. The district court then removed Ahern as trustee and appointed a new trustee who was also tasked with preparing an accounting of the trust assets. After the trustee filed an interim report, Bouvier and Montoya filed a motion for damages. The district court held

two sets of evidentiary hearings on the motion, one set in 2016 and one set in 2017.

At the 2016 hearings, the new trustee testified that while he could confirm that trust assets were missing, he could not finalize his accounting because Ahern had failed to provide him with necessary information regarding the trust's assets. The district court ordered that a second set of hearings would be scheduled once the trustee was able to finalize his report. After these hearings, Ahern's counsel moved to withdraw, which the district court granted. Although Ahern requested additional trust funds to obtain new counsel, the district court stated that it would not grant the request unless she provided information regarding the amount needed to retain counsel and to whom the funds would be paid. Despite failing to provide that information, Ahern again requested trust funds to hire counsel the day before the 2017 hearings were to begin. The district court granted the motion the same day.

At the start of the 2017 hearings, the counsel Ahern attempted to hire appeared and declined representation because he had not prepared and was worried about his ability to withdraw if the hearings proceeded. Ahern then requested a continuance, which the district court denied. The court-appointed trustee's testimony and exhibits from both sets of hearings showed that Bouvier and Montoya were entitled to more than $2 million in trust assets that Ahern failed to disburse; that Ahern made multiple withdrawals of trust funds after the court had removed her as trustee[1]; that

_____

[1]For example, the court-appointed trustee testified that Ahern withdrew over $400,000 from a trust account on the day she was removed as trustee; $500,000 from a trust account a few days after being removed; and further attempted, but was unable, to withdraw $100,000 in trust assets a month after the court removed her as trustee.

Supreme Court
OF
Nevada

(O) 1947A

a previous accounting of trust assets Ahern had provided to the court indicated that a certain account held almost $2 million in trust assets when the account actually only held less than $10,000; and that Ahern improperly used trust assets for "significant" personal expenses such as private jets and hotels. The trustee also testified that Ahern acted with extreme recklessness and in contravention of best business and accounting practices when she used cashier's checks to move trust funds, as such checks are negotiable instruments. In particular, the trustee testified that Ahern held approximately $1.2 million in trust assets in the form of a cashier's check made out to a trust account. And, although Ahern told the trustee that the check was deposited two weeks after it was withdrawn, the trustee testified that he himself recovered and deposited the cashier's check nearly two months after it was originally drawn. After all the hearings, the district court entered an order awarding $2,581,944.92 in compensatory damages ($809,841.92 of which the court-appointed trustee satisfied before the court entered its order), finding that punitive damages were warranted, and awarding $3.6 million in punitive damages. The district court based the amount of the punitive damages award on the $1.2 million cashier's check the trustee recovered. This appeal followed.

## II.

Ahern first argues that the district court abused its discretion in denying her motion to continue. A district court has the responsibility to manage its "individual calendar in an efficient and effective manner." EDCR 1.90(b)(1). This court has previously stated that an attorney's withdrawal, even on the eve of trial, does not require the granting of a motion to continue when "the withdrawal is unexplained, where no diligence in inducing counsel to remain in the case or in securing new

Supreme Court
of
Nevada

(O) 1947A

3

counsel is disclosed, and where it is not shown that the party is free from fault in the matter." *Benson v. Benson*, 66 Nev. 94, 98, 204 P.2d 316, 318 (1949); *see also Baer v. Amos J. Walker, Inc.*, 85 Nev. 219, 220, 452 P.2d 916, 916 (1969) (citing *Benson* with approval and concluding that the district court did not abuse its discretion in denying a motion to continue despite trial counsel being hired only three days before trial and requesting additional time to prepare).

Ahern's prior counsel's withdrawal was explained as a breakdown of the attorney-client relationship based on Ahern's failure to take counsel's advice. The district court set the February 9 and 10, 2017 hearing dates on November 6, 2017, around the same time Ahern's counsel moved to withdraw. In denying Ahern's motion for a continuance, the district court faulted Ahern for a lack of diligence in securing new counsel in that she failed to heed the court's instructions to supplement her request for trust funds with information regarding the amount of funds needed and what attorney she was seeking to hire. On this record, the district court did not abuse its discretion in denying the motion to continue. *See Bongiovi v. Sullivan*, 122 Nev. 556, 570, 138 P.3d 433, 444 (2006) (reviewing a decision on a motion to continue for an abuse of discretion); *see also Schwartz v. Schwartz*, 126 Nev. 87, 90, 225 P.3d 1273, 1275 (2010) (explaining that, under an abuse of discretion standard, this court will "not substitut[e] its own judgment for that of the district court" (internal quotation marks omitted)).

## III.

Ahern next argues that the district court erred in awarding punitive damages. NRS 42.005(1) provides that a court may award punitive damages "where it is proven by clear and convincing evidence that the

defendant has been guilty of oppression, fraud or malice, express or implied . . . for the sake of example and by way of punishing the defendant."[2] "In other words, . . . to justify punitive damages, the defendant's conduct must have exceeded mere recklessness or gross negligence." *Wyeth v. Rowatt*, 126 Nev. 446, 473, 244 P.3d 765, 783 (2010) (internal quotation marks omitted). To be clear and convincing, the evidence supporting the punitive damages award must be

> so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference . . . may be drawn.

---

[2]NRS 42.001 defines these terms as follows:

> 2.     "Fraud"     means     an     intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person.

> 3. "Malice, express or implied" means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others.

> 4. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person.

"Conscious disregard" is defined as "the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1).

Supreme Court
OF
Nevada

(O) 1947A

5

*In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995) (alteration in original) (quoting *Gruber v. Baker*, 20 Nev. 453, 477, 23 P. 858, 865 (1890)).

Whether the evidence supports a finding of oppression, fraud, or malice that warrants an award of punitive damages presents a question of law that this court reviews de novo. *Smith's Food & Drug Ctrs., Inc. v. Bellegarde*, 114 Nev. 602, 606, 958 P.2d 1208, 1211 (1998) ("The trial court is responsible to determine, as a matter of law, whether the plaintiff has offered substantial evidence of [fraud, oppression, or] malice, in fact, to support a punitive damage instruction."), *overruled on other grounds by Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 730, 192 P.3d 243, 246 (2008); *Valley Elec. Ass'n v. Overfield*, 121 Nev. 7, 9, 106 P.3d 1198, 1199 (2005) (questions of law are reviewed de novo). The decision to actually award punitive damages, however, "rests entirely in the discretion of the trier of fact," and this court will not overturn such a decision when it is supported by substantial clear and convincing evidence of fraud, malice, or oppression. *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 612, 5 P.3d 1043, 1052 (2000).

There is substantial clear and convincing evidence of Ahern's fraud, oppression, or malice in this case to support an award of punitive damages. Specifically, Ahern purposely refused to disburse over $2 million in trust proceeds to Bouvier and Montoya pursuant to the terms of the trust; she lied to the court-appointed trustee under penalty of perjury regarding the amounts held in trust (claiming to have $2 million in a specific account, but the account held less than $10,000); she used trust income for personal expenses; and she repeatedly withdrew money, or attempted to withdraw money, from the trust after being removed as its trustee. There is no

SUPREME COURT
OF
NEVADA

(O) 1947A

plausible argument that these actions were mere recklessness or gross negligence, *see Wyeth*, 126 Nev. at 473, 244 P.3d at 783, and Ahern does not challenge the finding that she failed to disburse more than $2 million in violation of the trust's terms. These actions were also violations of Ahern's fiduciary duties as a trustee which, in and of itself, can warrant an award of punitive damages. *See Clark v. Lubritz*, 113 Nev. 1089, 1098 n.7, 944 P.2d 861, 867 n.7 (1997) (citing with approval cases that stand for the proposition that punitive damages may be warranted when a party violates his or her fiduciary duties); *Randono v. Turk*, 86 Nev. 123, 129, 466 P.2d 218, 222 (1970) (recognizing that a trustee is also a fiduciary). Accordingly, the district court did not err or abuse its discretion in determining that the evidence supported an award of punitive damages.

## IV.

Ahern next argues that the amount of the punitive damages award must be reversed because the district court failed to hold a separate proceeding on that amount, in violation of NRS 42.005(3). Bouvier and Montoya agree that bifurcated proceedings are required, but argue that the district court complied with this requirement or, in the alternative, that the failure to comply was harmless and therefore does not warrant reversal.

The parties are correct that NRS 42.005(3) requires bifurcated proceedings for punitive damages: "If punitive damages are claimed . . . , the trier of fact shall make a finding of whether such damages will be assessed. If such damages are to be assessed, *a subsequent proceeding must be conducted* before the same trier of fact to determine the amount of such damages to be assessed." (emphasis added). *See also Wyeth*, 126 Nev. at 476, 244 P.3d at 785 ("By statute, Nevada requires that the liability determination for punitive damages against a defendant be bifurcated from

the assessment of the amount of punitive damages, if any, to be awarded."). In this case, although the district court held two separate hearings, it is clear from the record that the district court determined that punitive damages were warranted and the amount of those damages at the same time, rather than first determining whether punitive damages were warranted and then determining the proper amount of those damages. Indeed, although the district court made statements during the 2016 hearings suggesting punitive damages were warranted, the order resulting from those hearings specifically stated that "the final decision on whether punitive and/or treble damages should be awarded in addition to restitution will be made at the evidentiary hearing scheduled after [the court-appointed trustee] concludes discovery and prepares his report and accounting to the Court." And, in the final order after the 2017 hearings, the district court both concluded that punitive damages were warranted based on Ahern's egregious conduct and that the proper amount of those damages was $3.6 million. The district court therefore violated NRS 42.005(3).

Bouvier and Montoya assert that even if the district court violated NRS 42.005(3), that error was harmless and does not warrant reversal. *See* NRCP 61 (providing that the court should disregard any error "which does not affect the substantial rights of the parties"). We disagree. As Ahern suggests, if the district court had made an initial finding that punitive damages were warranted before proceeding to determine the proper amount of those damages, Ahern would have had the opportunity to present additional evidence bearing on the proper amount to award, including evidence regarding her financial condition. *See* NRS 42.005(4) (allowing a defendant to present evidence of his or her financial condition

in the second part of the bifurcated hearings); *Bongiovi*, 122 Nev. at 582, 138 P.3d at 451 (allowing a defendant to present evidence of his or her financial condition that a district court can consider when determining the amount of a punitive damages award). The inability to present information relevant to the amount of the punitive damages was especially harmful in this case considering the size of the punitive damages award. We therefore vacate the award of punitive damages and remand. On remand, the district court must conduct a new hearing regarding the proper amount of punitive damages to award.

## V.

In conclusion, the district court acted within its discretion when denying Ahern's motion to continue, and we affirm the part of the district court's order determining that punitive damages were warranted in this case. We vacate the portion of the order awarding punitive damages, however, and remand for the district court to conduct a second hearing to determine the amount of punitive damages to impose, in compliance with NRS 42.005.[3]

It is so ORDERED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

---

[3]Because we are vacating the punitive damages award and remanding for redetermination of its amount, we do not address Ahern's remaining arguments that the award was excessive and therefore a violation of her constitutional rights and that the amount of the award lacked an adequate evidentiary foundation. Ahern can re-raise these arguments in a subsequent appeal if she is aggrieved by the district court's decision on remand.

Supreme Court
OF
Nevada

(O) 1947A

cc: Hon. Gloria Sturman, District Judge
Solomon Dwiggins & Freer, Ltd.
Rushforth Lee & Kiefer LLP
Eighth District Court Clerk